*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Ellwood T. BOWEN III, Airman First Class**
United States Air Force, Appellant

**No. 16-0229**
Crim. App. No. 38616

Argued November 1, 2016—Decided February 8, 2017

Military Judge: Lyndell M. Powell

For Appellant: *Major Johnathan D. Legg* (argued); *Colonel Jeffrey G. Palomino.*

For Appellee: *Major Meredith L. Steer* (argued); *Colonel Katherine E. Oler*, and *Gerald R. Bruce*, Esq. (on brief).

Amicus Curiae for Appellant: *Patrick D. Kummerer* (law student) (argued); *Michael N. Mulvania*, Esq. (supervising attorney) (on brief)—University of Colorado Law School.

Amicus Curiae for Appellee: *Adam Zenger* (law student) (argued); *John G. Scott*, Esq. (supervising attorney) (on brief)—University of Colorado Law School.

Chief Judge ERDMANN delivered the opinion of the court, in which Judges STUCKY, RYAN, OHLSON, and SPARKS joined.

————————

Chief Judge ERDMANN delivered the opinion of the court.[1]

A panel of officer members convicted Airman First Class Ellwood T. Bowen III, contrary to his pleas, of one

————————

[1] We heard oral argument in this case at the University of Colorado Law School, Boulder, Colorado, as part of the court's "Project Outreach." *See United States v. Mahoney,* 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

specification of aggravated assault upon his wife, Mrs. MB, and one specification of assault consummated by battery upon a fellow airman, Senior Airman (SrA) BB, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2012).[2] The panel acquitted Bowen of two specifications of assault with a dangerous weapon, one specification of assault consummated by battery upon Mrs. MB, and one specification of communicating a threat, in violation of Articles 128, UCMJ, and Article 134, UCMJ, 10 U.S.C. §§ 928, 934 (2012). Bowen was sentenced to one year of confinement and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged but waived the mandatory forfeitures in the amount of $800 for the benefit of Bowen's dependent child. The United States Air Force Court of Criminal Appeals (CCA) affirmed the findings and the sentence. *United States v. Bowen*, No. ACM 38616, 2015 CCA LEXIS 453, at *15, 2015 WL 6655193, at *6 (A.F. Ct. Crim. App. Oct. 26, 2015).

Military Rule of Evidence (M.R.E.) 803 contains the "excited utterance" exception to the hearsay rule and provides for the admissibility of "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." M.R.E. 803(2). We granted review in this case to determine whether the military judge abused his discretion when he permitted evidence that the victim nodded her head to be admitted under the excited utterance exception.[3] We

---

[2] With respect to the specification of aggravated assault, the panel excepted the words "pushing her into a wall and furniture, kicking her in the face, and" and found Bowen not guilty of the excepted words. With respect to the specification of assault consummated by battery, the panel excepted the words "his hands, choke him, and push him into a wall and furniture," substituted "his hands and choke him," and found him not guilty of the excepted words and guilty of the substituted words.

[3] We specified the following issue:

> Whether the military judge erred in applying the "excited utterance" exception to the hearsay rule to permit the government to introduce through the testimony of law enforcement personnel that Appellant's wife nodded her head in response to a question whether her husband "did this," and in concluding that the prejudicial effect of this testimony was outweighed by its probative value. *See* M.R.E. 802

hold that, under the circumstances of this case, the military judge abused his discretion by admitting the hearsay testimony under M.R.E. 803(2) without adequately considering the victim's mental capacity at the time in question. We therefore reverse the military judge and the CCA.

## BACKGROUND

On November 24, 2013, Bowen, Mrs. MB, and SrA BB attended a party together where all three consumed alcohol. At some point during the night, Bowen became ill from excessive alcohol consumption and was escorted home between midnight and 2:00 a.m. by several partygoers, including his wife (Mrs. MB) and SrA BB. Once at the Bowens' residence, Bowen was placed on the couch. The party attendees who had helped Bowen then left the Bowens' residence, leaving only Mrs. MB, SrA BB, and Bowen at the house.

According to SrA BB, after they returned to the Bowens' residence, he and Mrs. MB took more shots of alcohol while Bowen slept on the couch. Eventually, SrA BB and Mrs. MB retired to the guest bedroom together and locked the door. They were engaging in sexual activity when they heard Bowen banging on the door and asking if Mrs. MB was in the guest room with SrA BB. Bowen broke through the locked door, pulled the blanket off of Mrs. MB and SrA BB, and asked why they were naked in bed together.

SrA BB testified that Bowen became angry, slapped and hit Mrs. MB, grabbed her by the hair and threw her out of the guest bedroom toward the front door, causing her to strike the wall and rendering her unresponsive. SrA BB asserted that he tried to stop Bowen, at which point the two of them got into a physical altercation. According to SrA BB, Bowen continued to strike Mrs. MB even after she remained unresponsive. SrA BB fled the house and went straight to Security Forces. SrA BB arrived at Security Forces at approximately 6:00 a.m. and reported that Mrs. MB was being assaulted by Bowen.

---

and 803(2); M.R.E. 403; *United States v. Donaldson*, 58 M.J. 477 ([C.A.A.F.] 2003); *United States v. Jones*, 30 M.J. 127 (C.M.A. 1990); *United States v. Arnold*, 25 M.J. 129 (C.M.A. 1987); *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), *cert. denied*, 450 U.S. 1001 (1981).

At 6:04 a.m., the Bowens' neighbors heard a "loud boom," followed by Mrs. MB's screams in "tremendous pain" from the bathroom or the bedroom area of the Bowens' home. The neighbors heard screams for help, the sound of bathwater running, and a male voice saying "why are you naked in the front bedroom?" Soon after hearing these noises, the neighbors called Security Forces to report the disturbance.

Security Forces responded to the residence and were let into the house by Bowen, who appeared disoriented. Technical Sergeant (TSgt) VAC inspected the house and found Mrs. MB unconscious in the bathtub of the master bedroom. Mrs. MB's head was leaning against the faucet and her hair was covering her face. Her eyes were swollen and there was a gash over one eye. TSgt VAC initially thought Mrs. MB was dead, but realized she was still alive when she heard her groan. TSgt VAC and Staff Sergeant (SSgt) T lifted Mrs. MB out of the bathtub and placed her on the bed in the master bedroom. At that point Mrs. MB was only partially conscious. SSgt T asked Mrs. MB if her husband "did this" to her. Mrs. MB nodded her head, which indicated an affirmative response to the law enforcement personnel. Mrs. MB was taken to the hospital where her blood alcohol level was registered at "221." As a result of the assault, Mrs. MB suffered a subdural hematoma, a traumatic brain injury, seventy percent visual loss, the loss of her sense of smell, and other lesser physical injuries. A craniotomy was required to reduce the swelling in her brain.

Bowen was charged with three specifications of assault against Mrs. MB, two specifications of assault against SrA BB, and one specification of communicating a threat. Before trial, Bowen raised an oral motion in limine to prevent the Government from introducing Mrs. MB's head nod under the excited utterance exception. Over defense counsel's objection, the military judge permitted TSgt VAC to testify that Mrs. MB nodded her head when SSgt T asked whether her husband "did this" to her. The military judge did not issue a written ruling, but from the bench explained:

> The court notes that there's been testimony from the neighbors who heard screaming from a female in that vicinity of the house only a few moments before law enforcement showed up. I think [that] although Mrs. [MB] is in no position to testify about her own mental state at the time and, certainly, was in no physical condition to manifest outward expressions of excitement, I think the fact that

> there were screams heard, shouting and banging heard in the bathroom only a few moments before, combined with Ms. [MB's] physical condition when law enforcement arrived, I think it's reasonable.

> The court finds that [the head nod] does fall under the excited utterance exception to hearsay, so the court will allow Sergeant [VAC] to testify to the head nod in response to the question.

After a recess, the military judge supplemented his ruling by adding:

> The court finds that a startling or stressful event occurred. And, again, the court references regardless of when some of the assault occurred on Ms. [MB], as the court noted previously the next door neighbors heard screaming and a female voice yelling stop, along with yelling from a male voice only minutes before. The court finds that that would be a startling stressful event for the person who is conducting the screaming. The declarant, that is Ms. [MB], despite the fact that she doesn't currently recall the incident, certainly she testified that she remembered being confused. And, certainly, from the testimony of the neighbors indicating that the female was screaming out in pain the court concludes that the declarant would have had personal knowledge, at least to the fact that she was in pain and suffering from severe injuries.

At trial, the Government presented, in relevant part, TSgt VAC's testimony as a first responder to the incident, the testimony of the neighbors regarding what they heard the night of the assault, and SrA BB's eyewitness account under a grant of immunity. The Government also revealed a prior instance of domestic violence between Bowen and Mrs. MB.

Although the Government called Mrs. MB to testify, she only had a vague recollection of the events on the night of the assault. Mrs. MB remembered lying on the floor by the couch in the living room and hearing Bowen and SrA BB fighting. Mrs. MB recalled Bowen yelling at SrA BB "what did you do to her?" and "what happened to her?" Mrs. MB also remembered getting up from the floor and walking toward the front door before falling near the entryway. Mrs. MB recalled being in the shower, feeling cold water, and believing that Bowen was concerned and taking care of her.

However, Mrs. MB relayed that she was confused at that time and "couldn't explain to him." Mrs. MB had no memory of speaking with investigators and stated that, if she had any conversations with Security Forces, her statements were not reliable since she was "[a]bsolutely not" in her right state of mind.

At trial, Bowen theorized that SrA BB was the perpetrator of the assault on Mrs. MB. Trial defense counsel emphasized the inconsistencies in SrA BB's story, that SrA BB's demeanor upon arrival at Security Forces did not match the seriousness of the report he was making, and the fact that SrA testified under a grant of immunity. Furthermore, although the neighbors heard a male and a female voice, trial defense counsel noted that the neighbors had no way of knowing for sure whether the male's voice was Bowen's. Mrs. MB also testified during cross-examination that she did not believe her husband would harm her in this way.

### ISSUE AND ARGUMENTS

We specified an issue in this case to determine whether the military judge abused his discretion by admitting TSgt VAC's testimony that Mrs. MB nodded her head after SSgt T asked whether Bowen "did this" to her under the "excited utterance" exception to the hearsay rule.[4]

Bowen argues that the military judge abused his discretion by admitting TSgt VAC's hearsay testimony because Mrs. MB was not in an excited state when she made the nonverbal statement. Bowen also emphasizes that Mrs. MB's statement was made in response to highly suggestive, vague, and closed-ended questioning by law enforcement and, therefore, was not sufficiently spontaneous to be admitted under the M.R.E. 803(2) hearsay exception. Finally, because the trial was closely contested and the Government's case relied primarily on circumstantial evidence and a single eyewitness with a motive to lie, Bowen urges the court to conclude this error prejudiced his substantial rights.

---

[4] Our specified issue also granted review of the military judge's M.R.E. 403 determination that the admitted testimony was not more prejudicial than probative. However, because we conclude that the testimony was erroneously admitted under M.R.E. 803(2), we do not reach the M.R.E. 403 question.

The Government counters by asserting that the military judge's findings of fact are supported by the record and, based on those factual findings, the military judge correctly applied the law in order to conclude the challenged hearsay was admissible as an excited utterance. The Government argues that the neighbors' testimony that they heard screams coupled with the fact that the investigators found Mrs. MB unconscious and badly beaten supports the military judge's conclusion that a startling or stressful event occurred and Mrs. MB was under the stress of that event when she nodded her head. Furthermore, according to the Government, the evidence does not support a finding that Mrs. MB's statement was the product of reflection and deliberation since Mrs. MB was largely unresponsive just moments before she made the statement. Finally, the Government contends that, even if the statement was erroneously admitted, there was no prejudice to Bowen since the Government presented a strong case against him, which was not effectively combated by trial defense counsel.

### DISCUSSION

"A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion." *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003). "Whether an error, constitutional or otherwise, was harmless is a question of law that we review de novo.... For nonconstitutional errors, the Government must demonstrate that the error did not have a substantial influence on the findings." *McCollum*, 58 M.J. at 342.

I.  Admissibility Under the Excited Utterance Exception

"A statement[5] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," is admissible as an exception to the general prohibition on hearsay. M.R.E. 803(2) (footnote added); *see Manual for Courts-Martial*, United States, Analysis of the Military Rules of Evidence

---

[5] A "statement" includes an "(1) oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." M.R.E. 801(a). The parties stipulated that the head nod in this case constitutes a statement. *See Bowen*, 2015 CCA LEXIS 453, at *10 n.3, 2015 WL 6655193, at *4 n.3.

app. 22 at A22-55 (2012 ed.) ("Rule 803(2) is taken from the Federal Rule [803(2)] verbatim."). "The implicit premise [of the exception] is that a person who reacts 'to a startling event or condition' while 'under the stress of excitement caused' thereby will speak truthfully because of a lack of opportunity to fabricate." *United States v. Jones*, 30 M.J. 127, 129 (C.M.A. 1990); *White v. Illinois*, 502 U.S. 346, 357 (1992) ("a statement that qualifies for admission under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability"). This court's predecessor adopted a three-pronged test to determine whether a hearsay statement qualifies as an excited utterance: (1) the statement must be "spontaneous, excited or impulsive rather than the product of reflection and deliberation"; (2) the event prompting the utterance must be "startling"; and (3) the declarant must be "under the stress of excitement caused by the event." *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987) (citations omitted) (internal quotation marks omitted). Relevant to the third prong of this inquiry is "the physical and mental condition of the declarant." *Donaldson*, 58 M.J. at 483.

We recognize that, under certain circumstances, a nonverbal hearsay statement such as a head nod might qualify as an excited utterance. *See, e.g.*, *Miller v. State*, No. 12-12-00401-CR, 2013 Tex. App. LEXIS 7679, at *7, 2013 WL 3243539, at *3 (Tex. Ct. App. June 25, 2013) (mem. op., not designated for publication) (upholding eye blinks as excited utterances). However, given the extent of the declarant's injuries in this case—including a subdural hematoma, a traumatic brain injury, seventy percent loss of vision, and the loss of smell—and the fact that her blood alcohol level was nearly three times the legal limit permitted for driving, whether Mrs. MB was mentally capable of understanding the question posed to her when she nodded her head is critical to deciding whether her nonverbal statement was admissible as an excited utterance. Thus, our review of the evidentiary ruling in this case necessitates determining whether the military judge adequately considered Mrs. MB's physical and mental condition.

In ruling that the head nod was admissible, the military judge referenced the "shouting and banging heard" by the Bowens' neighbors "combined with Ms. [MB's] physical condition when law enforcement arrived." Following a short

recess, the military judge provided a more detailed explanation for this conclusion:

> The court finds that a startling or stressful event occurred. And, again, the court references regardless of when some of the assault occurred on Ms. [MB], as the court noted previously the next door neighbors heard screaming and a female voice yelling stop, along with yelling from a male voice only minutes before. The court finds that that would be a startling stressful event for the person who is conducting the screaming. The declarant, that is Ms. [MB], despite the fact that she doesn't currently recall the incident, certainly she testified that she remembered being confused. And, certainly, from the testimony of the neighbors indicating that the female was screaming out in pain the court concludes that the declarant would have had personal knowledge, at least to the fact that she was in pain and suffering from severe injuries.

> The court finds  that in light of those facts the court can conclude that Ms. [MB] was in an excited, nervous, or stressful state at the time she nodded her head in response to the question by security forces.

From these findings we are unable to conclude that the military judge properly considered Mrs. MB's mental capacity as it pertained to the admissibility of the head nod. Quite to the contrary, the military judge's recognition that Mrs. MB was "in no position to testify about her own mental state [on the night in question] and, certainly, was in no physical condition to manifest outward expressions of excitement,"  undermines the conclusion that the declarant was under the stress of excitement caused by the event. Furthermore, as even Mrs. MB testified, her memory of the events on the night in question was vague and, if she had any conversations with Security Forces personnel that night her statements were unreliable since she was "[a]bsolutely not" in her right state of mind.

For these reasons, the military judge's brief reference to Mrs. MB's mental capacity is insufficient to assure us that he properly considered whether the head nod satisfied the third prong of the *Arnold* test. By failing to adequately address Mrs. MB's mental capacity—a critical aspect of the admissibility determination under these circumstances—the

military judge committed legal error and, thus, abused his discretion.[6]

II. Prejudice

"[A] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012). We evaluate the harmlessness of an evidentiary ruling by weighing: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999).

Applying the *Kerr* factors, we lack confidence that the panel members were not influenced by the improper hearsay testimony in this case. *Id.* The record demonstrates a closely contested court-martial, the outcome of which turned on the panel's resolution of who caused Mrs. MB's injuries. The Government's case against Bowen included the eyewitness testimony of SrA BB and "earwitness" testimony from the Bowens' neighbors, which generally corroborated the timeline established by SrA BB. The neighbors testified that they heard a male voice saying "why are you naked in the front bedroom?" which also supported SrA BB's version of events. Additionally, the Government uncovered a prior instance of domestic violence between Bowen and his wife.

By comparison, Bowen contended that SrA BB was responsible for Mrs. MB's injuries. In support of this theory, trial defense counsel emphasized the inconsistencies in SrA BB's story, his strange appearance to Security Forces investigators, and that he was testifying under a grant of immunity. Also, despite the prior domestic disturbance, Mrs. MB did not believe her husband would harm her in this way. Finally, Mrs. MB testified that while she was in the bathtub, she believed Bowen was taking care of her instead of trying to harm her. Ultimately, the panel acquitted Bowen of four of the six specifications charged.

---

[6] Due to the absence of sufficient facts pertaining to Mrs. MB's mental state at the time in question, we are unable to render a legal determination as to Mrs. MB's competence. We therefore reverse without making that determination.

The hearsay evidence was also likely material to the panel's resolution of key issues in the case. In particular, the identity of the perpetrator was a central issue at the court-martial. Thus, the introduction of TSgt VAC's testimony that Mrs. MB responded to the question of whether her husband "did this" to her with a head nod in affirmation— opposed to her simply groaning and making sounds—was presumably a compelling piece of evidence in the minds of the panel members. Moreover, trial counsel emphasized this evidence during closing statements by telling the members, "[TSgt VAC] approached [Mrs. MB], … [a]nd she asked the question, did your husband do this to you? [Mrs. MB] nodded her head affirmatively and she groaned. There were two eyewitnesses."

Upon this foundation, we lack confidence that Mrs. MB's head nod identifying Bowen as her attacker did not materially prejudice the panel's conclusion that Bowen was guilty of assault against Mrs. MB. Moreover, we conclude that the evidence had a prejudicial impact on Bowen's conviction for assault against SrA BB. SrA BB—the Government's key witness—had apparent motives to lie about the events during the hours in question. Coupled with trial defense counsel's credibility attacks against this witness, without Mrs. MB's head nod tending to support SrA BB's version of events, it is unclear if the members would have deemed SrA BB credible enough to convict Bowen of the assault against his fellow airman.

Consequently, we conclude that the erroneous admission of Mrs. MB's head nod identifying Bowen as her attacker materially prejudiced Bowen's substantial rights in this case.

### DECISION

The specified issue is answered in the affirmative. The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings of guilty to Charge I, Specifications 3 and 4, and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force with authorization for a rehearing on Charge I, Specifications 3 and 4.