# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39350**

————————————

**UNITED STATES**
*Appellee*

v.

**Michael L. MERRITT**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 1 February 2019

————————————

*Military Judge:* Michael D. Schag.

*Approved sentence:* Dishonorable discharge, confinement for 11 years, and forfeiture of all pay and allowances. Sentence adjudged 26 June 2017 by GCM convened at Fort Leavenworth, Kansas.

*For Appellant:* Lieutenant Colonel Garrett M. Condon, USAF; Major Dustin J. Weisman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Rebecca A. Magnone, USAF; Mary Ellen Payne, Esquire.

Before HUYGEN, MINK, and CARRILLO, *Appellate Military Judges*.

Judge CARRILLO delivered the opinion of the court, in which Senior Judge HUYGEN and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

CARRILLO, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, consistent with his pleas, of one charge and one specifica-

tion of indecent liberty with a child, in violation of Article 120(j), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(j).[1]

Appellant was sentenced to a dishonorable discharge, 11 years of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. There was no pretrial agreement in this case. The convening authority approved the sentence as adjudged except for the reduction to E-1.[2]

Appellant asserts two assignments of error: (1) whether the military judge erred in permitting two witnesses to testify as surrogates for the victim to admit victim impact testimony and (2) whether Appellant's sentence is inappropriately severe. We find no error that materially prejudiced Appellant's substantial rights. Accordingly, we affirm the findings and sentence.

## I. BACKGROUND

The court-martial that is the subject of the appeal now before the court was Appellant's third.

At Appellant's first trial in 2014, then-Technical Sergeant Merritt pleaded and was found guilty of six charges and 16 specifications for conduct in violation of Articles 80, 120, 120b, 125, 128, and 134, UCMJ, 10 U.S.C. §§ 880, 920, 920b, 925, 928, 934. He was sentenced to a dishonorable discharge, confinement for 50 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved 25 years of confinement in accordance with the pretrial agreement and disapproved the adjudged forfeitures but otherwise approved the adjudged sentence. *See United States v. Merritt,* No. ACM 38653, 2015 CCA LEXIS 382, at *1 (A.F. Ct. Crim. App. 10 Sep. 2015) (unpub. op.), rev. denied, 75 M.J. 151 (C.A.A.F. 2015). At a second court-martial in 2015, Appellant pleaded and was found guilty of one charge and two specifications for conduct in violation of Article 120, UCMJ, 10 U.S.C. § 920. He was sentenced to a dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. Pursuant to a pretrial agreement, the convening authority approved nine years of confinement but otherwise approved the adjudged sentence. *See United States v. Merritt*, No. ACM 38819, 2016 CCA LEXIS 651, at *1 (A.F.

---

[1] This statute is applicable for offenses occurring on or after 1 October 2007 and before 28 June 2012. Appellant's charged offense occurred between on or about 1 March 2010 and on or about 1 August 2010.

[2] Appellant was an E-1 at the time the charge in the instant trial was referred and throughout the proceedings.

Ct. Crim. App. 2 Nov. 2016) (unpub. op.), review denied, 76 M.J. 70 (C.A.A.F. 2017). Both cases involved multiple victims, all of whom were minor children.

The relevant facts from Appellant's second court-martial are as follows: Appellant pleaded guilty to two specifications of aggravated sexual contact with a child who had not attained the age of 12 years. The first victim, who was 10 or 11 years old, was seated on a chair next to Appellant's step-daughter, watching a video on Appellant's computer. Appellant positioned himself on the floor between them and touched the victim on her thigh for approximately five minutes and then rubbed her genitalia, outside of her clothing, for approximately five minutes. For the second victim, who was 7 or 8 years old, Appellant admitted he lifted her up onto his shoulders, caressed her inner thighs, and placed his hands under her shorts near her crotch.

In 2010, Appellant was stationed at Ramstein Air Base (AB), Germany. The victim in this case, DS, was 10 years old at the time and lived with her parents, who were also stationed at Ramstein AB. DS was close friends with Appellant's step-daughter, and the two girls often played at Appellant's home. During one of DS's visits to Appellant's home, Appellant asked to speak with DS privately. DS walked into Appellant's bedroom and Appellant followed her. Appellant closed and locked the bedroom door. He then removed DS's pants, touched the inside waistband of her underwear, sniffed her groin, and made sexually suggestive comments.

## II. DISCUSSION

### A. Testimony of Sentencing Witnesses

Appellant alleges that the military judge abused his discretion by permitting AG and Dr. FL to testify as "surrogates" for DS and further specifies that AG's testimony included improper hearsay and that Dr. FL's testimony was not properly limited to expert opinion. Regarding AG's testimony, we find error but no prejudice; regarding Dr. FL's testimony, we find no error.

The Government called two sentencing witnesses: AG, who is DS's mother, and Dr. FL, who was recognized as an expert in general psychology, pursuant to Rule for Courts-Martial (R.C.M.) 1001(b).

After AG and Dr. FL testified and the Government finished presenting its sentencing case, DS, 17 years of age at trial, made an unsworn victim impact statement pursuant to Rule for Courts-Martial (R.C.M.) 1001A. DS told the court how what happened to her when she "was only ten years old [had] forever changed [her] life." She gave details about her subsequent depression, suicide attempts, sleep problems, discomfort with sexual jokes, being

"freaked" out by military men, being "uncomfortable" with sex education at school, changes to her previously "bubbly and outgoing" personality, and her fear of people in general.

### 1. AG's Testimony

#### a. Additional Background

AG testified about her observations that DS was no longer a "bubbly child" and that DS had become reclusive and stayed in her room a lot after the incident with Appellant.[3]

AG also testified about DS's religious practices and belief in God. Trial defense counsel objected on relevance grounds, and the Government offered the statements as "victim impact . . . . It's the effects on the victim herself and her religious beliefs based on what has happened to her." The military judge overruled the objection. AG then testified that, after the incident with Appellant, DS "stopped going to church. She stopped believing in God completely."

According to AG, when DS "gets stressed out or uncomfortable," she "cut[s]" herself by gouging her arms with her fingernails. When AG further stated that "[o]n one occasion at school [DS] came home with cuts all over her arms. She had told me that ----," trial defense counsel immediately objected on the basis of hearsay, and the military judge sustained the objection. Following the ruling, the trial counsel then asked AG if she knew why DS did that, AG responded, "I do now. At the time I did not." Trial counsel asked a follow-on question, "Was it because of this incident?" Trial defense counsel again objected on the basis of hearsay. Trial counsel explained that it was being offered as "effect on the listener" and "victim impact." The military judge then overruled the objection. Trial counsel did not repeat the question, and AG never answered it.

AG further testified that DS attempted suicide at least three times. When asked if these occasions were "based off of this incident, this crime [by Appellant]," AG responded, "Absolutely, yes." Trial defense counsel did not object.

#### b. Law

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017) (citation omitted). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of

---

[3] Appellant concedes that these statements were proper evidence in aggravation under R.C.M. 1001(b)(4).

fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003) (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)).

R.C.M. 1001(b)(4) provides for sentencing evidence in aggravation, which includes "evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense commited by the accused." Evidence in aggravation is presented by the Government under R.C.M. 1001(b), but information about "victim impact" is presented by a crime victim under R.C.M. 1001A. "Victim impact" includes "any financial, social, psychological, or medical impact on the victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2). R.C.M. 1001A(e) allows a victim to make an unsworn statement.

Hearsay is defined as "an out-of-court statement made by a declarant that is 'offered in evidence to prove the truth of the matter asserted' in that statement." *United States v. McCaskey*, 30 M.J. 188, 190–91 (C.M.A. 1990) (quoting Mil. R. Evid. 801(c)). "Unless such a statement meets at least one of the specific and time-tested exceptions . . . the general rule is that hearsay is inadmissible." *Id.* at 191 (internal citation omitted) (citing Mil. R. Evid. 802). Statements made not for their substance but for their "effect on the listener" may be admissible. *United States v. Barnes,* No. ACM 38720, 2016 CCA LEXIS 267, at *15–17 (A.F. Ct. Crim. App. 27 Apr. 2016) (unpub. op.) (victim's disclosure to great-grandmother admissible to show what actions the great-grandmother took after the disclosure).

### c. Analysis

Trial counsel called AG to testify that DS stopped believing in God, "cut" herself, and attempted suicide because of the incident with Appellant. We analyze each in turn. First, at trial, defense counsel objected to the testimony about religion on relevance grounds; trial counsel offered it on the basis of victim impact. Appellant now contends that there is "no rational basis for [AG's] knowledge [that DS no longer believed in God] other than hearsay or speculation" and therefore the military judge erred by allowing AG's testimony. We agree that the military judge erred with regard to AG's testimony about DS's religious belief but find that any error did not prejudice Appellant.

We find that hearsay was implicated in AG's testimony that DS stopped believing in God. That DS stopped going to church was a legitimate observation by AG of DS's behavior (and also relevant evidence in aggravation). But AG could have only known that DS stopped believing in God because of hearsay from DS or speculation by AG. *See* Mil. R. Evid. 801(c). Either way, AG's testimony about DS's religious belief or lack thereof should not have been admitted, and we find the military judge abused his discretion when he did so.

Trial counsel also asked AG about DS's cutting and suicide attempts. After the military judge overruled defense counsel's objection to whether DS cut herself because of the incident with Appellant, AG did not testify about the reasons for DS's cutting. Next, when trial counsel asked AG whether DS's suicide attempts were due to the incident with Appellant, defense counsel did not object. Because there was no specific testimony from AG about why DS cut herself and no objection to AG's testimony about why DS attempted suicide, we find no error. Furthermore, AG's testimony that DS cut herself and attempted suicide was observation about DS's behavior and, like AG's observation of changes to DS's personality, admissible. The implication that DS's self-harm resulted from Appellant's crime flows as a reasonable inference from the fact that the self-harm only occurred after Appellant sexually abused DS. Thus, AG's testimony was not hearsay or based on hearsay; it was evidence of the psychological impact on DS of Appellant's crime, or evidence in aggravation admissible under R.C.M. 1001(b)(4).

Having determined the military judge abused his discretion by admitting AG's testimony that DS no longer believed in God, we consider the impact of the error on the adjudged sentence. "When there is error in the admission of sentencing evidence, the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). In determining whether an error substantially influenced an adjudged sentence, we consider four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id*. (quoting *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017)). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *Id*. (citing *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007)).

In this case, the Government's case was very strong. Appellant in his guilty plea explained in detail how he sexually abused DS when she was 10 years old. The military judge also had ample aggravation evidence to consider as Appellant had a history of documented misconduct, specifically, two court-martial convictions for sexually abusing multiple children. The defense case was relatively weak, consisting simply of Appellant's written, three-page unsworn statement and a very brief in-court unsworn statement wherein he apologized and asked for leniency. We next consider the materiality and quality of AG's testimony that DS stopped believing in God. After both AG and Dr. FL testified, DS provided victim impact information by making an in-court unsworn statement pursuant to R.C.M. 1001A. DS explained the impact Appellant's crime had on her, and she described some of the same impacts described by AG. DS explained how what happened to her when she

was 10 years old "forever changed" her life. DS became depressed and suicidal and experienced other psychological impacts. In light of DS's statement, and AG's testimony that DS stopped going to church, the materiality of AG's testimony about DS's religious belief was low. While the quality of AG's testimony about the impact of Appellant's crime on DS was high, it was largely cumulative to the victim impact DS herself provided in her unsworn statement to the court. Accordingly, we find that, although the military judge erred by admitting AG's testimony regarding DS's religious belief, the adjudged sentence was not substantially influenced by the error and thus the error did not prejudice Appellant.

### 2. Dr. FL's Testimony

#### a. Additional Background

After AG, the Government next called Dr. FL, who had a long career as a clinical psychologist and was familiar with characteristics and behaviors of child sexual abuse victims. He was qualified at trial as an expert in general psychology. To prepare for trial, Dr. FL reviewed Appellant's prior convictions, the Air Force Office of Special Investigations' report of investigation, some "past testimony," and DS's forensic interview. He also interviewed DS and AG.

Trial counsel began the direct examination of Dr. FL by asking about "reprocessing," which Dr. FL explained as "having to reprocess the trauma as you age, at different mileposts of aging." Trial defense counsel objected based on relevancy and under Mil. R. Evid. 403 because DS had not yet testified and Dr. FL's testimony was simply "additional information to impassion the Court with regard to victim impact." Trial counsel proffered that "it goes absolutely to victim impact" and, to illustrate the impact, Dr. FL would testify about several "psychological theories" and then explain how the answers to questions during his interviews with DS and AG were consistent with the theories. The military judge overruled the objection.

Trial counsel next asked Dr. FL about child victims and religion and what he had observed or heard DS say with regard to the issue. Dr. FL testified "we talked about what happened . . . the word she used was 'terrified.'" Trial defense counsel objected on hearsay grounds; trial counsel offered to rephrase the question; and the military judge sustained the objection. Trial counsel instead asked how some child sex abuse victims deal with religion after an offense, and Dr. FL responded that "some turn away . . . . [DS] turned away from religion."

Without further defense objection, Dr. FL testified about several additional theories: behavior of victims of child sexual abuse, religion, depersonalization, anxiety, avoidance behavior, sleep behavior, social interactions, hid-

7

ing of emotions, reverse parenting, cutting, and suicide attempts. For each of these theories, Dr. FL first explained the theory and then offered DS's own statements as they related to each theory.

Under cross-examination, Dr. FL testified that the first time he met DS was the day before trial when he met with her for an hour and a half with five other adults in the room and that he did not go into the details of the other "major event" of her life—her parents' divorce. He also testified that, although he had asked to review DS's medical records, they were not provided. When trial defense counsel asked Dr. FL about connecting the incident with Appellant to DS's symptoms of trauma, Dr. FL testified "that the majority of what she said is a result of that event. Yes, sir. [But DS] did indicate that the divorce [of her parents] did exacerbate her depression."

### b. Law

We review a military judge's ruling admitting expert testimony for an abuse of discretion. *United States v. Norris*, 55 M.J. 209, 212 (C.A.A.F. 2001) (citations omitted). Mil. R. Evid. 702 prescribes:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"In a trial involving the sexual assault of a child, '[a]n expert may testify as to what symptoms are found among children who have suffered sexual abuse and whether the child-witness has exhibited these symptoms.'" *United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010) (quoting *United States v. Birdsall*, 47 M.J. 404, 409 (C.A.A.F. 1998)). The expert's opinion may be based on inadmissible facts or data. Mil. R. Evid. 703. The underlying facts may be disclosed by the expert if the military judge finds that their probative value substantially outweighs their prejudicial effect. *Id.*

Pursuant to Mil. R. Evid. 702, an expert may "testify in the form of an opinion or otherwise." The expert's opinion may be based on facts or data the

expert has either personally observed or has been made aware of. Mil. R. Evid 703.

### c. Analysis

Dr. FL testified as an expert in psychology, presented various psychological theories about how a crime impacts a victim, and explained how Appellant's crime impacted DS. Appellant asserts that most of Dr. FL's testimony was improper and that the Government "smuggled" in hearsay of DS's statements through Dr. FL's testimony. We are not persuaded.

In this case, Dr. FL, a licensed psychologist since 1971, reviewed DS's forensic interview and conducted his own interviews of DS and AG. At trial, Dr. FL testified to psychological effects experienced by children who have suffered sexual abuse. He also testified whether DS had exhibited the symptoms of abuse. This testimony is permissible. *See Mullins*, 69 M.J. at 116.

In *United States v. Stark*, 30 M.J. 328, 329 (C.M.A. 1990), an expert psychologist viewed the videotaped interviews of the victims, two young boys, and conducted his own interview of the boys and their father. The expert testified at trial about some of the short-term effects of sexual abuse exhibited by the boys, which included fear, guilt, and shame. *Id*. Our superior court held the basis for the expert testimony was sufficient under Mil. R. Evid. 703 because the expert had conducted personal interviews and observed the boys in their videotaped interviews and at trial. *Id*. at 330. The court further noted that, based on the "sufficient basis and defense counsel's own vigorous cross-examination, the members were properly left to attach whatever weight they felt appropriate" to the expert's opinions. *Id*.

Applying *Stark* to Appellant's case, we find there was a sufficient basis in this case for the military judge to allow Dr. FL's expert testimony because Dr. FL interviewed DS and AG and watched DS's forensic interview. Although Dr. FL was not asked each time if he had an "opinion," he nonetheless rendered one in the form of testifying to some symptoms commonly faced by child sexual assault victims and then telling the court what he learned from DS about each symptom as she experienced it. Dr. FL was not an improper "surrogate" for DS but rather provided proper expert testimony. Also as in *Stark*, trial defense counsel in this case conducted a vigorous cross-examination, during which Dr. FL stated that DS's parents' divorce exacerbated her depression and that the records he had requested but not received (DS's medical and school records) would have been helpful in his psychological evaluation. The military judge, therefore, could attach whatever weight he deemed appropriate to the expert testimony. Thus, we find that Dr. FL's testimony was properly admitted as expert testimony and evidence in aggravation of the psychological impact of Appellant's crime on DS.

**B. Sentence Severity**

Appellant argues that 11 years of confinement is inappropriately severe for "what amounted to a relatively momentary and non-invasive sexual assault of a child" and that his sentence is highly disparate to those in similar cases. He urges us to compare his sentence in this case to the sentence he received in his second court-martial because they are "closely related," and for which nine years of confinement was approved, pursuant to a pretrial agreement. The facts of the aggravated sexual conduct in that case are similar in that Appellant apparently exploited his step-daughter's friendships to gain access to his victims. Otherwise, the facts of each assault vary. In this case, he touched DS in his bedroom while she was alone and away from his step-daughter; in the other case he touched one victim while she was watching a video right next to his step-daughter, and he touched the other victim after putting her up on his shoulders (in an unknown location).

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). While we have great discretion in determining whether a particular sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

We "are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). "An appellant who asks [this court] to engage in sentence comparison bears the burden of demonstrating that any cited cases are 'closely related' to the appellant's case, and that the sentences are 'highly disparate.'" *Id.* (quoting *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999)). If appellant meets his burden, "the burden shifts to the Government to show a rational basis for the disparity." *Id.* (citing *Lacy*, 50 M.J. at 288). Cases are "closely related" when, for example, they involve "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Lacy*, 50 M.J. at 288.

We do not decide whether Appellant's case is closely related to his second court-martial because, assuming *arguendo* that Appellant has met his burden to show the cases are "closely related," we still would not find the 11-year sentence from his third court-martial highly disparate. "Sentence comparison does not require sentence equation." *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001) (citations omitted). Appellant's sentence to 11 years of confinement for an offense involving one minor victim is not highly disparate when compared to the adjudged 10-year sentence from his second court-martial for offenses involving two different victims. The military judge in this case properly considered both prior courts-martial and other misconduct as aggravation evidence.

After giving individualized consideration to Appellant, the nature and severity of his offense, and all other matters contained in the record of trial, we do not find Appellant's sentence inappropriately severe.

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

11