# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39935**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Justin J. BAILEY**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 July 2021

————————————

*Military Judge:* Christopher M. Schumann.

*Sentence:* Sentence adjudged 16 April 2020 by GCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 18 May 2020: Dishonorable discharge, confinement for 25 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant:* Captain David L. Bosner, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Dayle P. Percle, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

A general court-martial composed of a military judge convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of

one charge with two specifications of indecent liberties with a child, two specifications of aggravated sexual abuse of a child, and one specification of abusive sexual contact with a child, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, *Manual for Courts-Martial, United States* (2008 ed.); one charge with one specification of sexual abuse of a child and one specification of rape of a child, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b, *Manual For Courts-Martial, United States* (2016 ed.) (2016 *MCM*); and one charge and specification of obstructing justice in violation of Article 134, UCMJ, 10 U.S.C. § 934, 2016 *MCM*.[1] The court-martial sentenced Appellant to a dishonorable discharge, confinement for 45 years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved the findings and sentence with the exception of the term of confinement, which was reduced to 25 years pursuant to the PTA.[2]

On appeal, Appellant raises two issues before this court: (1) whether the military judge plainly erred when he permitted trial counsel to read unsworn victim impact statements into the record and abused his discretion when he overruled defense objections to improper content in unsworn victim impact statements; and (2) whether Appellant's sentence was appropriate in light of Appellant's civilian conviction in the state of Nevada, where he is currently serving a prison term of 10 to 30 years.[3]

With respect to issue (2), we have carefully considered Appellant's contention and find it does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

---

[1] Appellant's crimes spanned several years, and therefore several iterations of the UCMJ. All references to punitive articles will cite the relevant version of the UCMJ. All other references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). All references to the Rules for Courts-Martial (R.C.M.) are to the 2019 *MCM*.

[2] The pretrial agreement (PTA) specified that the maximum period of confinement that could be approved for the offenses was 25 years. There were no other limitations on the sentence. On 16 April 2020, the convening authority also deferred Appellant's term of confinement until Appellant is released from civilian confinement in the State of Nevada.

[3] Issue (2) was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Appellant's sexual attraction to young children started when he was in college. At first, he contained his attraction to searching for and looking online at sexually explicit images and videos involving children. Appellant also liked to view sexually explicit anime and read erotic stories about sexual acts involving young children. Appellant admitted that he preferred sexual stories about children under the age of 14 because he was attracted to the innocence of their youth. As discussed below, Appellant began acting on these fantasies as early as 2011.

Appellant's behavior came to light in the summer of 2018 when his biological daughter, DSB, visited him in Nevada where he was stationed. DSB was approximately 6 years old that summer. During DSB's visit, Appellant digitally penetrated her vagina, and caused her to rub his penis while she was watching cartoons. After DSB returned home to her mother, she reported what her father had done. Subsequently, Appellant pleaded guilty and was convicted in the State of Nevada for his crimes against DSB. He was sentenced to 10 to 30 years in prison.[4]

During the investigation involving DSB, Appellant confessed to multiple additional crimes concerning five other minor children. Specifically, related to Specification 1 of Charge I, Appellant admitted to disrobing and masturbating in front of his 3-year-old and 1-year-old stepdaughters, SS and AS, respectively, on two occasions. Related to Specifications 2 and 3 of Charge I, Appellant admitted to rubbing his penis on the vulva of his stepdaughter, AS, while changing her diaper, and later masturbating and ejaculating on her. Related to Specification 4 of Charge I, Appellant admitted to causing his stepdaughter, SS, on multiple occasions, to touch his penis while she was watching cartoons. Related to Specification 5 of Charge I, Appellant also admitted that in 2012, he rubbed his penis against the buttocks of KB, his fiancée's 8-year-old daughter, through the clothing, while KB was sleeping in bed with Appellant and his fiancée. These offenses all occurred in 2011–2012 while Appellant was stationed and living in Georgia.

Related to Specification 1 of Charge II, Appellant admitted that in 2018, while stationed and living in Nevada, he caused his 5-year-old son, WB, to

---

[4] These facts from Appellant's stipulation of fact admitted at his court-martial are only referenced to explain how Appellant came to the attention of law enforcement. Appellant's offenses regarding DSB were not part of his court-martial charges. We note that the military judge, sitting as the trier of fact, expressly stated that he did not consider these facts in crafting the sentence. Likewise, we do not consider them on appeal when reviewing the appropriateness of the sentence.

touch Appellant's penis while WB was watching cartoons. Related to Specification 2 of Charge II, Appellant admitted that while he was changing the diaper of his less than 1-year-old daughter, PB, he licked her vagina several times, became aroused, and ejaculated on floor next to the changing table. Finally, concerning the Specification of Charge III, Appellant admitted that he deleted all the data from his computer once he learned he was under investigation. All conduct concerning criminal acts referenced in the specifications of Charges II and III took place in Nevada in 2018. At his court-martial, Appellant pleaded guilty to all charges and specifications.

## II. DISCUSSION

Appellant contends that the military judge erred when he permitted trial counsel to read two victim statements into the record. Appellant also argues that the military judge abused his discretion when he overruled defense objections to impermissible content in the two unsworn victim impact statements. Appellant contends these issues warrant setting aside the sentence.

### A. Additional Background

ASB—Appellant's ex-wife and DSB's mother—was appointed by the military judge as the legal representative for her other children, AS and SS, for the purpose of asserting their rights in the court-martial. Appellant's wife at the time of his court-martial, LB, was also appointed by the military judge as the legal representative for her children, KB, PB, and WB, for the same purpose.

At the conclusion of the Government's presentencing case, there was a presentation of victims' matters under R.C.M. 1001(c). Trial counsel noted that ASB and SS had prepared victim impact statements, labeled as Court Exhibits I and II, respectively. In addition to ASB serving in a representative capacity for her children, ASB prepared her own victim impact statement that discussed the effects of Appellant's crimes on her.

ASB's victim statement read as follows:

> Your Honor, having to hear my six-year-old daughter tell me that her own father had done anything inappropriate and awful to her was the scariest thing I had ever dealt with. It broke my heart that she came home after six weeks of no contact allowed with me, and this is what she had to tell me. But I raised a brave and strong little girl and I'm beyond proud of her.
>
> My world turned upside down even more after discovering that he confessed to events involving all of my children and the other children involved. I didn't even know how to feel thinking that the awful things had happened right under my nose. But I have

come to the realization, that these awful, heartbreaking, terrible things are his fault and only his and I feel that the maximum penalty under the law should be given; however, no punishment is sufficient for what he has done to all the children and families involved.

Trial defense counsel objected to ASB's statement in its entirety. The Defense later clarified their objections to the military judge. First, they argued that ASB was not a victim. Specifically they stated that ASB's statement was from her own perspective and she was "supposed to be representing" the children who the Defense argued were the actual victims. Second, they objected to any reference to DSB in the statement, since she was not a victim in the case. Finally, the Defense argued that the end of ASB's statement contained an impermissible sentence recommendation.

The second victim statement was from SS. It read as follows:

Your Honor, I'm very upset about everything that's happened. What happened to all of the kids is very bad and I wish there was a way to help make things better. When I was little and we lived with him, [Appellant] always gave me weird vibes and I was worried that something was going to happen, and it happened to my little sister and it really bothers me. I just wish it never came to this and that nobody had to be hurt by him.

The Defense objected to the portion of SS's statement that read: "it happened to my little sister" as being outside the scope of actual impact. Specifically, trial defense counsel objected to SS discussing her siblings and the experiences they went through.

After hearing all of the objections and reviewing the statements, the military judge ruled as follows:

So, first and foremost, with regard to Court Exhibit I, I do find that Ms. [ASB] qualifies as a crime victim under Article 6b and RCM 1001(c); she is the mother of the two named victims – two of the named victim's [sic] in this case, and as the mother of those minor children, it would certainly qualify as an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of the offenses. I think that definition is certainly broad enough to encompass the mother of two of [the] named victims in the case, at a minimum from the emotional impact that is expressed in the letter itself. So I'll certainly allow the statement from Ms. [ASB] because I do believe it meets the requirements under the rules for – as a proper impact statement.

With regard to the specific content, the first reference to having heard about her six-year-old daughter [DSB], and again, the court first notes that I recognize unsworn statements are not evidence, they are simply – it's similar to an accused's unsworn statement, [they] are a legal right for those individuals to be heard, but they don't necessarily constitute evidence in the case, and there are some boundaries with regards to how those letters can be admitted and considered. So, with that as my backdrop, I'll note that with regard to the reference to the six-year-old daughter, the court will certainly consider that as a reference point as to how this case came to light, because it is in fact consistent with information that is in the Stipulation of Fact. The Stipulation of Fact itself indicates, as I recall, I don't have the specific language in front of me, but the case came to light to some degree because the six-year-old daughter returned home and reported that conduct. What the court will not do is essentially say that as – or consider that as victim impact as it relates to an offense of which the accused has been convicted in this courtroom. So, I will only consider that in the context of its Ms. [ASB] articulating essentially how this case came about, or at least came to her attention, and go from there. So, it will not be considered from the context of the court inappropriately considering this in the context of punishment of the accused for an offense that's not the subject of this court-martial. So, I understand that.

With regard to the commentary regarding her personal feelings regarding a maximum penalty under the law, the court would simply just disregard any inference or suggestion that the victim impact statement is making a sentence recommendation. The court will not consider any sentence recommendation other than those presented by counsel when deciding an appropriate sentence in this case. But otherwise, with those factors articulated on the record, I'm going to admit Court Exhibit I over defense objection and I will consider the statements made there and with those boundaries articulated.

With regard to Court Exhibit II, again, little doubt that [SS] is also a victim as defined by our Article 6b and [R.C.M.] 1001(c). With regard to the commentary that [SS] makes in here about her siblings and the experiences that they have gone through, I also find that that commentary fits within the definition of victim impact. Again, victim impact includes any among other factors psychological impact on a crime victim. The emotional and

> intended fallout of a crime victim who was part of an offense that involved their siblings directly is as impactful on that individual, or can be as impactful on that individual as the offenses that were committed against her personally; the emotional impact of knowing that her sisters were a part of this particular – siblings were part of this particular offense has clearly had an emotional impact at least to the degree that it's written out here in the letter. I do believe that that falls firmly within appropriate victim impact commentary within the context of [R.C.M.] 1001(c).

> So, again, over defense objection, I'll consider Court Exhibit II as a properly admitted victim impact statement in accordance of Article 6b.

Trial counsel announced to the military judge that both victims who authored Court Exhibits I and II requested that trial counsel read the statements out loud. The Defense did not object to this request. The military judge then stated to trial counsel that he knew the Government did not represent the victims. The Defense also presented a victim impact statement from Appellant's wife, LB, which was marked as Court Exhibit III. Trial defense counsel read this statement out loud without objection from the Government.

**B. Law**

Interpreting R.C.M. 1001 is a question of law that we review de novo. *United States v. Barker*, 77 M.J. 377, 382 (citing *United States v, Leahr*, 73 M.J. 364, 369 (C.A.A.F. 2014)) (interpreting an earlier version of R.C.M. 1001A which had been incorporated in R.C.M. 1001 by the time of Appellant's court-martial).

If an appellant forfeited an objection—in other words, failed to make a timely assertion of a right—we review the objection for plain error. *See United States v. Jones,* 78 M.J. 37, 44 (C.A.A.F. 2018) (citing *United States v. Sweeney*, 70 M.J. 296, 303–04 (C.A.A.F. 2011)). "Plain error requires showing (1) error; (2) the error was clear or obvious; (3) the error prejudiced the accused's substantial rights." *United States v. Easterly*, 79 M.J. 325, 327 (C.A.A.F. 2020) (citing *United States v. Grier*, 53 M.J. 30, 34 (C.A.A.F. 2000)).

"If an error occurs in the admission of evidence at sentencing, the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *United States v. Hamilton,* 78 M.J. 335, 342 (C.A.A.F. 2019) (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). When determining whether an error substantially influenced the sentence, we consider the following four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the

quality of the evidence in question." *Hamilton*, 78 M.J. at 343 (citing *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017)).

Article 6b, UCMJ, grants victims of offenses under the UCMJ the right to be reasonably heard at sentencing hearings related to such offenses. Article 6b(a)(4)(B), UCMJ, 10 U.S.C. § 806b(a)(4)(B). A victim covered by this right is one "who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense under [the UCMJ]." Article 6b(b), UCMJ, 10 U.S.C. § 806b(b); *see also* R.C.M. 1001(c)(2)(A) (defining "crime victim" as "an individual who has suffered physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty or the individual's lawful representative or designee appointed by the military judge under these rules").

Victims in non-capital cases may exercise their right to be reasonably heard through sworn or unsworn statements. R.C.M. 1001(c)(2)(D)(ii). Unsworn statements may be oral, written, or both. R.C.M. 1001(c)(5)(A). Victims who are under 18 years of age may make an unsworn statement either personally or through a designee appointed under R.C.M. 801(a)(6). *See, e.g.*, R.C.M. 1001(c)(2) (including an R.C.M. 801(a)(6)-appointed designee within the definition of "crime victim"). "The military judge may permit the crime victim's counsel, if any, to deliver all or part of the crime victim's unsworn statement." R.C.M. 1001(c)(5)(B). Statements offered under R.C.M. 1001 "may only include victim impact or matters in mitigation," and should neither exceed those topics nor recommend a specific sentence. R.C.M. 1001(c)(3). Victim impact under R.C.M. 1001 includes "any financial, social, psychological, or medical impact on the victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(b).

"The rights afforded by Article 6b, UCMJ, and R.C.M. 1001[ ] belong to victims, not the Government, and trial counsel may not appropriate the rights of a victim in order to admit Government evidence in its aggravation case." *United States v. Shoup*, 79 M.J. 668, 671 (A.F. Ct. Crim. App. 2019) (citing *Hamilton*, 78 M.J. at 342).

**C. Analysis**

As noted above, trial defense counsel did not object to trial counsel reading Court Exhibits I and II out loud to the military judge, so we review for plain error. We note at the outset, as our superior court explained in *Barker,* that a crime victims right to be reasonably heard under R.C.M. 1001 "belongs to the victim, and is separate and distinct from the government's right to offer victim impact statements in aggravation." *Barker,* 77 M.J. at 378. We also agree with our sister court that R.C.M. 1001 "does not contemplate either trial counsel or defense counsel participating in a victim's unsworn statement." *See United*

*States v. Cornelison*, 78 M.J. 739, 744 (A. Ct. Crim. App. 2019), *rev. denied*, 79 M.J. 189 (C.A.A.F. 2019). In fact, we find that R.C.M. 1001 only identifies three people—the victim, victim's designee, and victim's counsel—who are allowed to give a victim's unsworn statement. *See* R.C.M. 1001(c)(2)(A) and R.C.M. 1001(c)(5)(B). Therefore, we conclude that the military judge erred when he permitted both counsel to read these statements out loud during sentencing. We also find that the error was clear or obvious, and now turn our attention to the issue of prejudice. *See United States v. Easterly*, 79 M.J. 325, 327 (C.A.A.F. 2020) (requiring that an error "prejudiced the accused's substantial rights" to constitute "plain error").

Reviewing the respective strengths of the government and defense cases, *see Hamilton*, 78 M.J. at 342, we find the Government's evidence at trial was exceptionally strong and the Appellant's crimes were particularly heinous. Appellant committed divers and prolonged sexual acts on five children, under the age of 10, who were his own family members. Appellant pleaded guilty to all charges and specifications and does not contest the validity of his pleas. In fact, Appellant's counsel concedes in his brief to this court that the findings case in Appellant's court-martial was inherently aggravating. Our review further finds that the Government's evidence highlighted the exceptional aggravation resulting from the nature of the offenses, as well as the lifelong impact of Appellant's crimes on all of the victims and families. In contrast, the defense case offered little to mitigate the offenses. Appellant introduced only a few relatively generic character letters, called one witness—his wife, LB—and gave an unsworn statement. In sum, the Defense put on evidence that Appellant was honest, had the support of his parents and wife, took responsibility for his crimes, and wanted to have a chance to live life after jail.

It is also evident in the context of the horrific crimes committed by Appellant that the method of delivery for Court Exhibits I and II was not prejudicial, and that the material contained therein was of minimal additional value in light of the already admitted evidence of Appellant's serious crimes. The fact that trial counsel read the statements out loud, as opposed to the victims themselves or their counsel, does not in and of itself create prejudice. Crime victims are certainly permitted the opportunity to make a statement to the court and the military judge discussed on the record that he understood that trial counsel did not represent any of the victims. Importantly, the victim impact statements had been marked as court exhibits, and their content was already before the military judge, whether or not the statements themselves were read out loud. We see no evidence that the military judge gave more weight to these statements because trial counsel read them out loud, nor do we find that the content of these statements added much to what was already known by the military judge. Another consideration weighing against prejudice is the fact that Appel-

lant's trial defense counsel also read a victim impact statement out loud, raising the possibility trial defense counsel strategically decided not to object to trial counsel's reading in order to be able to do the same with a statement far more favorable to Appellant. Thus, we conclude the fact trial counsel read aloud two victim impact statements—which were already court exhibits in a military judge-alone trial, in which the military judge acknowledged on the record that he recognized trial counsel did not represent the victims—did not prejudice Appellant in any perceivable way.

Moreover, the military judge further limited the content of the victims' statements by stating that he would not consider the possible sentence recommendation from a victim, and would also not consider for sentencing purposes any reference to any other victim—specifically DSB—who was not a named victim in this court-martial. Thus, the military judge told the parties he was not going to consider the very information Appellant now claims was improperly included in the statements. "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). We see nothing in the record to overcome this presumption with respect to the content of the unsworn statements. Instead, we conclude Appellant's complaint is largely moot because the military judge gave Appellant the remedy he requested at trial: to not consider the offending information. In conclusion, we are convinced that Appellant was not prejudiced by these matters and that they did not substantially influence the adjudged sentence. *See Hamilton*, 78 M.J. at 343.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court