*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
CRISFIELD, LAWRENCE, and J. STEPHENS,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Ryan C. ARLES**
Information Systems Technician Third Class (E-4), U.S. Navy
Appellant

**No. 201800045**

Decided: 13 August 2019

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Commander Derek D. Butler, JAGC, USN. Sentence adjudged 12 October 2017 by a special court-martial convened at Naval Station Norfolk, Virginia, consisting of a military judge alone. Sentence approved by the convening authority: reduction to pay grade E-1, confinement for 315 days and a bad-conduct discharge.

For Appellant: Major Matthew A. Blackwood, USMCR.

For Appellee: Lieutenant Clayton S. McCarl, JAGC, USN; Major Kelli A. O'Neil, USMC; Mr. Samuel Gold, Counsel Under Supervision.

Judge LAWRENCE delivered the opinion of the Court, in which Chief Judge CRISFIELD and Judge J. STEPHENS joined.

_____

**This opinion does not serve as binding precedent,
but may be cited as persuasive authority under
NMCCA Rule of Practice and Procedure 30.2.**

*Counsel for Appellee corrected.*

_____

LAWRENCE, Judge:

The appellant was convicted, in accordance with his plea, of one specification of possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012).

The appellant raises two assignments of error (AOEs):[1] (1) the trial defense counsel (TDC) were ineffective by not advising the appellant that states or territories of the United States in which he may later reside may consider his special court-martial conviction a felony; and (2) the military judge erred by admitting a victim impact statement under RULE FOR COURTS-MARTIAL (R.C.M.) 1001A, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), without the presence or request of the victim, victim's counsel, or representative of the victim. We find no prejudicial error and affirm.

## I. BACKGROUND

While the appellant was attending "C" School for advanced technical training within his rating, an individual he met through a mobile messaging application sent him a link to a separate cloud-based file hosting service that contained files of various child pornography. The appellant created a new password-protected account of his own on this file hosting service and transferred approximately 142 of the files to his own account.

On the day he placed these files into his account, the appellant opened some of the files. Approximately 33 contained pornographic videos of minors engaging in various forms of sexual acts upon themselves or with others, or making a lascivious exhibition of their genitalia or pubic region. Despite his belief that these were child pornography videos, the appellant maintained control over his account, continued to store them and made no effort to delete them.

The cloud-based file hosting service discovered what it believed to be child pornography in the files uploaded by the appellant to his account. This service contacted the National Center for Missing and Exploited Children (NCMEC), which in turn alerted local civilian police. The Naval Criminal Investigative Service traced these activities to the appellant through the personal email account he associated with the file hosting service. Additional

---

[1] We have reordered the AOEs.

facts necessary for resolution of the AOEs are included in the discussion below.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

The appellant contends that his TDC were ineffective in their representation by assuring him that he would not be considered a felon if he waived his right to plead not guilty and instead pleaded guilty to the sole charge and specification under a negotiated pretrial agreement (PTA).[2]

#### 1. The legal standard of review

We review de novo claims of ineffective assistance.[3] The Sixth Amendment to the United States Constitution entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms."[4] To succeed in his claim, an appellant must show that: (1) his TDC were deficient in their performance; and (2) there is a reasonable probability that the deficient performance prejudiced the appellant.[5]

When it is alleged that deficient performance of counsel resulted in the appellant entering a guilty plea and forgoing his right to a contested trial, we must "consider whether the [appellant] was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.'"[6] In such a case, prejudice can be shown by the appellant "demonstrating a '*reasonable probability* that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[7]

#### 2. Discussion

Here, in agreeing to plead guilty and waive his right to a contested trial, the appellant entered into a pretrial agreement that changed his court-

---

[2] Declaration of Appellant of 13 June 2018.

[3] *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018).

[4] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[5] *Id.* at 687.

[6] *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (ellipsis in original) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)).

[7] *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (emphasis added).

martial forum from a general court-martial to a special court-martial. That change significantly reduced the maximum punishment he faced from 10 years' confinement, total forfeitures, and a dishonorable discharge, to 1 years' confinement, forfeiture of two-thirds pay per month for 12 months, and a bad-conduct discharge. In his declaration, the appellant asserts, without further support, that "[w]hile in confinement [he] learned that [he] may be considered a felon due to [his] conviction."[8] Further, he avers he would not have entered into the PTA had he been informed by his TDC "there was even a chance" of being classified a felon for purposes of disclosures on job applications or losing his rights to vote or possess firearms.[9]

In contrast to the general list of potential collateral consequences referenced in the appellant's declaration, in *Lee v. United States*, the prospect of avoiding deportation was "*the* determinative factor" in Lee's assent to a plea.[10] Lee faced grave consequences if deported. He had lived for 35 years as a lawful permanent resident of the United States, not once returning to the country from which he had emigrated as a child. He was the sole caregiver in the United States for his elderly parents, who were naturalized citizens. The government conceded that Lee's counsel was deficient in his performance by not providing even the most basic notice regarding his high risk of deportation, as mandated years before by *Padilla v. Kentucky*.[11] Lee not only repeatedly stressed to his counsel that he could not accept any risk of agreeing to a plea if it carried a possibility of deportation, but he answered the judge in the affirmative when asked if his decision to plead guilty would be affected by the risk of deportation in a conviction. Only after further assurance from his counsel that there was no such risk and that this was only a standard warning did Lee enter his guilty plea.

In *Lee*, the government urged the Supreme Court to follow its line of cases where relief for attorney errors requires the appellant to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."[12] However, the Court underscored the life-altering consequences of an almost-certain deportation, reasoning that in a case with such extreme collateral consequences, it may be rational to reject a plea "if the

---

[8] Declaration of Appellant of 13 June 2018.

[9] *Id.*

[10] *Lee,* 137 S. Ct. at 1967.

[11] *Padilla v. Kentucky*, 599 U.S. 356 (2010).

[12] *Id.* at 372.

consequences of taking a chance at trial were not markedly harsher than pleading."[13]

Under *Strickland*, we need not determine whether counsel were constitutionally deficient in their performance "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice."[14] Here, even if we assume, arguendo, that the TDC were deficient in failing to properly warn the appellant that upon his likely return to Virginia, the Commonwealth may determine for itself which state crime is most similar to his military offense, cause his military conviction to be treated as a felony under state law, and impose additional collateral consequences under state law, we find no prejudice to the appellant. Under the circumstances, a reasonable counsel would have advised the appellant to plead guilty to the agreement they had negotiated. Irrespective of advisement of counsel regarding potential treatment of his crimes under state law, it would not have been rational for the appellant to reject a PTA that significantly limited his exposure to confinement and other direct consequences of his actions.

Not only was the negotiated PTA reasonable under the circumstances, but during his plea inquiry, the appellant stated he understood there were "potential collateral effects" of his plea, including the *possibility* [he would] have to register as a sexual offender.[15] Coupled with inquiry concerning deportation, the appellant was certainly on notice of the possibility of the wide range of other impacts to his plea. We are not convinced specific inquiry is required to cover all possibilities for each accused.

The evidence against the appellant was very strong. He used his email and contact information to set up the file service on which he uploaded child pornography. The 33 pornographic videos he uploaded, viewed and continued to retain in his account were of known minors, including multiple series of victims catalogued by NCMEC. Even if bargained down to a lower forum to limit the maximum exposure to confinement, forfeitures, and form of punitive discharge, few if any state or territory of the United States would likely treat possession of 33 NCMEC-verified pornographic videos of minors as a misdemeanor-level offense. The Supreme Court in *Padilla* offered that counsel with a client facing multiple charges might strike an agreement to dismiss a charge carrying a greater likelihood of deportation in order to preserve such a

---

[13] *Lee*, 137 S. Ct. at 1969.

[14] *Strickland*, 466 U.S. at 697

[15] Record at 45 (emphasis added).

clearly expressed and paramount goal of his client. But the only reasonable victory—a special court-martial for a sole charge and specification despite very solid evidence—was already achieved by the appellant's TDC. Accordingly, we find no prejudice to the appellant.

## B. Admission of Victim Impact Statement

The appellant contends the military judge erred by admitting into evidence, over his TDC's objection, Prosecution Exhibit (PE) 9. This was a copy of an unsworn victim impact statement from a victim in a specified series of child pornography videos that was included among the videos the appellant was convicted of possessing. The government offered PE 9 as evidence in aggravation in its presentencing case. It contended PE 9 showed the continuing psychological impact on the victim, who fears that those she encounters in her everyday life may have seen the vile pornographic acts perpetrated upon her as a child, with the appellant having perpetuated that fear through his possession of this video series.

The TDC objected to the use of this unsworn statement dated and signed by the victim years before his client possessed these videos. They argued that this statement was improper evidence in aggravation under R.C.M. 1001(b)(4) or as a statement of victim impact under R.C.M. 1001A.

In his oral ruling admitting PE 9, the military judge closely relied upon the Air Force Court of Criminal Appeals' (AFCCA) decision in *United States v. Barker* as persuasive authority.[16] He found sufficient continuing impact upon the victim to provide a nexus with the appellant's conduct, even though the appellant's criminal act of possession of the child pornography involving this victim came years after the victim's statement and despite no evidence that she had participated in or was even aware of this case.

### 1. The legal standard of review

We review a military judge's admission or exclusion of evidence for an abuse of discretion.[17] "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be ar-

---

[16] *United States v. Barker*, 76 M.J. 748 (A.F. Ct. Crim. App. 2017), *aff'd on other grounds*, 77 M.J. 377 (C.A.A.F. 2018), overruled in part in *United States v. Hamilton*, 77 M.J. 579 (A.F. Ct. Crim. App. 2017).

[17] *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013).

bitrary, fanciful, clearly unreasonable, or clearly erroneous."[18] A military judge abuses his discretion by admitting a victim impact statement that does comply with R.C.M. 1001A or R.C.M. 1001(b)(4).[19]

*2. Discussion*

In admitting PE 9, the military judge in his oral ruling did not clearly articulate whether he was doing so pursuant to R.C.M. 1001A (crime victim's right to be reasonably heard) or R.C.M. 1001(b)(4) (government's presentation of evidence in aggravation). We discuss each in turn.

Because R.C.M. 1001A concerns the right of the *victim* to be heard, "the introduction of statements under this rule is prohibited without, at a minimum, either the presence or request of the victim, R.C.M. 1001A(a), the special victim's counsel or the victim's representative, R.C.M. 1001A(d)-(e)."[20] As the Court of Appeals for the Armed Forces (CAAF) clarified:

> All of the procedures in R.C.M. 1001A contemplate the actual participation of the victim, and the statement being offered by the victim or through her counsel. Moreover, they assume the victim chooses to offer the statement for a particular accused, as they permit only the admission of information on victim impact "directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2).[21]

Here, the government itself sought to introduce PE 9 without any showing that it had reached out to the victim to seek her participation through a sworn or unsworn statement in *this* case as envisioned by R.C.M. 1001A. While the military judge did not specify the rule under which he admitted the statement, his reliance upon the earlier version of *Barker*—that was subsequently overruled by the CAAF concerning admission of victim impact statements without a proper proponent—appears to indicate he erred in doing so pursuant to R.C.M. 1001A.

Nonetheless, PE 9 would have been properly admitted under R.C.M. 1001(b)(4). It would appear that the AFCCA opinion in *Barker* distracted both the trial counsel and the military judge as neither explicitly focused up-

---

[18] *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

[19] *United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019).

[20] *Hamilton*, 78 M.J. at 341 (quoting *Barker*, 77 M.J. at 382).

[21] *Barker*, 77 M.J. at 383.

on the fact that PE 9 was offered and marked as a government exhibit. "Marking the victim impact statement[ ] as prosecution exhibit[ ] accurately captured how [it was] admitted as th[is] exhibit[ ] [was] offered by the Prosecution during *its* sentencing case."[22] The CAAF in *Hamilton* noted that victim impact statements were not admissible by the government in aggravation without agreement of the defense in a stipulation or otherwise. However, the appellant in his PTA agreed not to object to "statements offered by the [g]overnment in aggravation to include written . . . statements . . . of any victim . . . on the basis of foundation, relevancy, hearsay, lack of confrontation, or authenticity."[23] The military judge inquired into the PTA with the accused and accepted that it was in conformity with public policy and his notions of fairness. We conclude that the PTA allowed the government to introduce PE 9 as evidence in aggravation as it was fairly negotiated with the appellant to allow such written victim statements.

Even if we were to assume the military judge erred in admitting the victim impact statement, we nonetheless would find the appellant did not suffer prejudice to his substantial rights. We test for prejudice in the admission of evidence at sentencing by determining "whether the error substantially influenced the adjudged sentence."[24] Four factors test whether an error substantially influenced a sentence: "(1) the strength of the [g]overnment's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question."[25]

The government presented a strong presentencing case. During the providence inquiry, the appellant admitted he knowingly downloaded a number of files from a link sent to him by a user in a social media platform. He further admitted that he alone created an account on the file hosting service in order to upload and store these files and that he alone knew the password required to access the files. In his stipulation of fact, the appellant admitted he opened 33 videos he found to contain what he knew to be minors, "based on [their] physical characteristics," engaging in "oral or vaginal intercourse, engaging in masturbation, or . . . other lascivious exhibition of the minors' genitals or

---

[22] *Hamilton*, 78 M.J. at 341 (citation omitted) (emphasis in original).

[23] Appellate Exhibit I at 2.

[24] *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009) (citations omitted).

[25] *Hamilton*, 78 M.J. at 343 (quoting *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017)).

pubic area.''[26] Even so, he wrongfully continued to store them in his personal account.

The appellant's presentencing case was substantially weaker by comparison. He presented character statements from his mother, his father, and a work supervisor who knew the appellant for a short time after his misconduct. Two evaluation reports spoke to his performance prior to his misconduct, and photographs showed him with friends and family from his youth to his time in the Navy. Finally, the appellant submitted an unsworn statement in which among other things he apologized for his misconduct.

Taken in context, the victim impact statement was not of great import to the appellant's sentence at this military judge-alone trial. We are mindful that "the military judge is presumed to know what portions of argument are impermissible, absent clear evidence to the contrary."[27] Even as he admitted the victim impact statement, the military judge recognized that there was little danger of unfair prejudice to the appellant, noting he would only consider the impact to the victim by the appellant himself possessing the videos, not extending to the creation of the videos, or how others downloaded or viewed them.

In argument, the trial counsel made one reference to the statement: "[H]is actions are a vicious cycle of child exploitation . . . . [E]very day she has to walk down the street wondering if that person had seen her be raped as a child."[28] Hence, even if the exhibit itself was improperly admitted, the government's argument was proper in that it "related to revictimization through the continued circulation of pornographic images."[29]

Lastly, the appellant substantially reduced his exposure through his PTA that provided his offense would be tried not at a general court-martial, but before a special court-martial. At this forum, the adjudged sentence that included 315 days' confinement fell within the significantly reduced jurisdictional maximum. We are satisfied that any error in the admission of PE 9 had at most a negligible impact on the sentence.

---

[26] PE 11 at 2.

[27] *Hamilton*, 78 M.J. at 343 (citing *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008)).

[28] Record at 101.

[29] *Hamilton*, 78 M.J. at 343.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and the sentence are correct in law and fact and that there is no error materially prejudicial to Appellant's substantial rights. Arts. 59 and 66, UCMJ. Accordingly, the findings and the sentence as approved by the convening authority are **AFFIRMED**.

Chief Judge CRISFIELD and Judge J. STEPHENS concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court