# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39770 (f rev)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**David A. TELLOR, Jr.**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 1 September 2021

———————————

*Military Judge:* Andrew R. Norton (remand); Mark F. Rosenow.

*Sentence*: Sentence adjudged on 1 May 2019 by GCM convened at Mountain Home Air Force Base, Idaho. Sentence entered by military judge on 13 August 2019 and reentered on 21 March 2021: Dishonorable discharge, confinement for 7 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant:* Major Amanda E. Dermady, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Anne M. Delmare, USAF; Major Brian E. Flanagan, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and CADOTTE, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge KEY and Judge CADOTTE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

Appellant's case is before this court for the second time. The military judge found Appellant guilty, in accordance with his pleas pursuant to a pretrial agreement, of one specification of sexual assault of a child in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[1,2] A general court-martial composed of officer members sentenced Appellant to a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. On 25 June 2019, the convening authority signed a memorandum in which he provided the language of the reprimand, but otherwise did not explicitly take action on the findings or sentence.[3] On 13 August 2019, the military judge signed an entry of judgment stating the final sentence.

Appellant raised nine issues on appeal to this court: (1) whether the military judge abused his discretion by allowing hearsay testimony; (2) whether the military judge abused his discretion when he allowed the victim to exceed the permissible scope of her unsworn statement; (3) whether the military judge abused his discretion by erroneously excluding impeachment evidence offered by the Defense; (4) whether trial counsel's sentencing argument was improper; (5) whether there is a question as to whether outside influence was improperly brought to bear on any court member; (6) whether Appellant's commander's disparaging post-trial comments to Appellant—not included in the record of trial or allied papers—unlawfully increased Appellant's punishment; (7) whether cumulative error requires a rehearing on the sentence; (8) whether Appellant's sentence is inappropriately severe; and (9) whether Appellant is entitled to relief for the conditions of his post-trial confinement.[4] However, upon our initial review we deferred consideration of these issues and remanded the record to the Chief Trial Judge, Air Force Trial Judiciary, due to the convening authority's failure to take action on the entire sentence. *United States*

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial*, United States (2016 ed.). Unless otherwise specified, all other references to the UCMJ, the Rules for Courts-Martial (R.C.M), and the Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] A second specification of sexual assault of a child was withdrawn and dismissed with prejudice in accordance with the terms of the pretrial agreement.

[3] The terms of the pretrial agreement did not affect the convening authority's ability to approve the adjudged sentence. The pretrial agreement provided, *inter alia*, the convening authority would approve no confinement in excess of 15 years.

[4] We have slightly reordered the assignments of error presented in Appellant's brief to this court. Appellant personally raises issues (8) and (9) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

*v. Tellor*, No. ACM 39770, 2021 CCA LEXIS 102 (A.F. Ct. Crim. App. 9 Mar. 2021) (unpub. op.) (per curiam).

Accordingly, the convening authority took action on the entire sentence, a military judge reentered the judgment of the court-martial, and the record was returned to this court for completion of our review pursuant to Article 66(d), UCMJ, 10 U.S.C. § 866(d). Appellant has not raised any additional assignments of error. On further review, we have carefully considered issues (6) and (7), and we find they warrant neither further discussion nor relief. *See United States v. Jessie*, 79 M.J. 437, 444–45 (C.A.A.F. 2020); *United States v. Gray*, 51 M.J. 1, 61 (C.A.A.F. 1999); *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). As to the remaining issues, we find no error that has materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND[5]

Appellant met DS in approximately March 2015 when Appellant's father, DT, began dating DS's mother, DC. At the time, Appellant was 16 years old and lived with his father in Illinois; DS was 11 years old and lived with her mother. In approximately August 2015, Appellant and DT began living together with DS and DC. While they lived together, Appellant and DS viewed and referred to one another as step-siblings, although their parents were not married. Beginning in approximately the summer of 2015, Appellant penetrated DS's vulva with his penis approximately two or three times per month on average. During some of these incidents, Appellant would blindfold DS, restrain her with a belt, hold her hands behind her back, or strangle her neck with his hands. This continued until Appellant departed the home to join the Air Force in the summer of 2017. DS did not report these incidents, and DS's mother DC was unaware of them at the time.

Appellant began basic training in August 2017. After completing basic training, he attended technical training until November 2017. After technical training, en route to his first duty assignment from 21–29 November 2017 Appellant visited the house where DT, DC, and DS lived. On one of the nights he was staying with DT, DC, and DS, he penetrated DS's vulva with his penis. At the time, Appellant was 18 years old and DS was 13 years old. DS did not initially report the November 2017 sexual assault, and Appellant proceeded to Mountain Home Air Force Base (AFB), Idaho.

In February 2018, Appellant's father DT physically assaulted DC in their home while DS was present. This incident resulted in DT being arrested and

---

[5] The following background is based primarily on the stipulation of fact admitted at Appellant's court-martial as Prosecution Exhibit 1.

agreeing to temporarily move out of the house for a week. During this period while DT was absent, DS reported the sexual acts that Appellant had committed on her.

## II. DISCUSSION

### A. Hearsay

#### 1. Additional Background

DS's mother DC testified as a prosecution witness during sentencing proceedings. During DC's cross-examination, trial defense counsel elicited that while Appellant's father DT was temporarily living away from DC and DS in February 2018, DS told DC that she did not want him to move back in. DC further testified that one or two days after that conversation is when DS reported Appellant's sexual misconduct with DS, after which DC ended her relationship with DT.

On redirect examination, trial counsel asked DC whether DS "had any interaction with [DT] about the assaults that were occurring with [Appellant]." DC replied, "She did." Trial counsel then asked, "And what was that?" At that point, trial defense counsel objected on the basis of hearsay and DC's lack of personal knowledge. The following colloquy ensued:

> MJ [military judge]: Government, is the relevance of this predicated on the truth of those interactions [between DS and DT] or the witness'[s] understanding that such interaction occurred and how that might have influenced her behavior or her feeling or is it something else?
>
> CTC [trial counsel]: It's the second, your honor. What I'm trying to get to is an additional explanation for why [DS] might not want this particular individual [DT] in the house, aside from what the defense counsel already elicited which ----
>
> MJ: Let me hear the question one more time and I'll rule on it as actually going to be stated to the witness. Don't answer it, quite yet. Go ahead, let me hear it in its final form.
>
> CTC: I'll try to ask it the same way I did. Are you aware whether your daughter had any interactions with [DT] about the assaults that were occurring by the accused?
>
> MJ: Overruled. You can answer the question, yes or no, are you aware of whether or not your daughter had any interaction with the accused's father about the sexual abuse by the accused, yes or no?

WIT [DC]: Yes.

MJ: Are you aware that that did take place, that there were interactions between her and the accused's father on the subject of the accused['s] sexual abuse of your daughter?

WIT: There was a conversation between the two, yes.

MJ: Were you present for this?

WIT: I was not.

MJ: Who told you about this conversation?

WIT: [DS] told me about it and I did question the father.

MJ: With the follow-up question, Members, you can consider all those answers and it's consistent with the Court's earlier ruling [overruling the Defense's objection].

Trial counsel resumed questioning DC:

CTC: . . . [W]hen [DS] told you about that, did she express to you any feeling about the conversation that she had had with [DT]?

MJ: Defense counsel, anything?

CDC [Circuit Defense Counsel]: Again, hearsay and I do not believe the then existing mental or emotional state exception applies because it's talking about after that conversation, retrospectively, how she might ----

MJ: [Trial counsel]'s not the proponent for the truth of the matter asserted though, she's already outlined that she wants it to be used for a non-hearsay purpose, the reasons that I describe[d] previously.

CDC: Your Honor, respectfully, the defense believes that this is only relevant if this conversation in fact occurred.

MJ: But how can that be the case? The proponent of this evidence is the government saying that we want the members to consider the credibility of this witness in the context of having received from her daughter a recitation of facts. That's the point. So I understand the idea is it would need to have happened for it to be meaningful in one sense as it reads to the daughter. But for it to be meaningful for a mother, it would only need to have been related to the mother that this thing happened, insofar as it might bear on her feelings about the accused or the accused's father, excuse me, or the daughter. So is there any other objection other than relevance to this?

> CDC: Sir, I apologize. I thought the government was intending
> to introduce this to show that this conversation, in fact, occurred.
> If the government is not intending to produce it to show that this
> conversation in fact occurred, and just to show the effect on this
> particular witness, then no, the defense does not have an objec-
> tion.
>
> MJ: Government, am I understanding that you're the proponent
> of the evidence in the way that I just described it to the defense?
>
> CTC: Sir, it's both that and the impact of the conversation that
> [DS] had with the father had on [DS] herself as expressed to her
> mother.
>
> MJ: . . . What's the hearsay exception, if it's for the latter pur-
> pose that you just set out?
>
> CTC: The then existing mental state of her fear and concern
> about [DT].

The military judge clarified with the witness DC that the conversation be-
tween DS and Appellant's father took place on or about February 2017, but
that it was February 2018 when DS told DC about it. The military judge then
advised "[t]he objection is going to be sustained and overruled in part." The
military judge permitted trial counsel to complete this line of questioning. DC
testified that DS "said that [DT] made her feel like it was her fault." DC pro-
vided DS's description of the circumstances of her conversation with DT: "[DT]
walked in on [Appellant and DS] doing something of some sort, I don't have
any details about that, he was on top of her that's all I know. And [DT] pun-
ished [Appellant] and he took [DS] for a car ride . . . and told her that it was
her fault."

The military judge then provided the following instruction to the court
members regarding DC's testimony:

> Members of the Court, I have sustained the objection in part and
> overruled the objection in part. Because of the nature of this tes-
> timony coming in the way it has, you can only consider this tes-
> timony for one limited purpose, subject to any other instruction
> I might give you at the end of the case . . . .
>
> The limited purpose for which you can consider this exchange,
> that was just described, is not for the truth of the matter as-
> serted. You can consider it only insofar as it bears on the credi-
> bility of this witness, her motives, her biases, her inclinations to
> tell the truth in her testimony here, that she might feel either
> toward or against the accused, toward or against [DT], toward

or against her daughter. What that means is you have no evidence to suggest that this conversation actually took place between the victim and [DT], that it took place at that location, or that he communicated those things to her, or that she ended up feeling that way at the time those things were communicated to her. It doesn't matter if any of those things are true or not true because of the limited purpose for which you are allowed to consider this testimony is insofar as it bears on the credibility of [DC] and how it might influence her perception of events or her earlier testimony on any issue up to this point.

The court members affirmed that they understood and could follow this instruction. When the military judge asked whether either party requested reconsideration or additional instructions, counsel for both the Government and the Defense stated they did not.

### 2. Law

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017) (citation omitted). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003) (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

"Whether an accused has waived an issue is a question of law we review de novo." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Id*. (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). "[A] valid waiver leaves no error to correct on appeal." *Id*. (citations omitted). However, Article 66, UCMJ, 10 U.S.C. § 866, empowers a Court of Criminal Appeals (CCA) to address a legal error in spite of waiver or forfeiture at trial. *See United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018) (citations omitted).

In general, "hearsay" is a statement "the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted." Mil. R. Evid. 801(c). Hearsay is not admissible in a court-martial unless otherwise provided by federal statute or the Military Rules of Evidence. Mil. R. Evid. 802.

"When there is error in the admission of sentencing evidence, the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). "When determining whether an error had a substantial influence on a sentence, this Court considers the following four factors: '(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question.'" *Id*. (quoting *Bowen*, 76 M.J. at 89) (additional citation omitted).

### 3. Analysis

Appellant contends the military judge abused his discretion by admitting DC's testimony describing what DS told her about DS's conversation with DT in February 2017. Appellant argues the Government wanted to introduce this evidence for a hearsay purpose—to prove that the February 2017 conversation actually occurred. Although the military judge instructed the court members they could use this evidence only for the non-hearsay purpose of the effect of DS's February 2018 statements on her mother DC, Appellant argues the military judge erred nonetheless because that was not the Government's purpose in eliciting the testimony.

In response, the Government argues Appellant waived this issue when trial defense counsel affirmatively stated the Defense did not have an objection to the non-hearsay purpose of the February 2018 conversation's impact on the witness, DC. We agree. It is true that the military judge appears to have initially misunderstood trial counsel's purpose in eliciting the testimony, and initially failed to clarify for what purposes it was being admitted. However, trial counsel did affirm that the non-hearsay purpose the military judge identified was *one* of the purposes for the testimony, and the military judge eventually made clear that was the only purpose for which it was admitted. In addition, the military judge gave an appropriate limiting instruction that made clear that, *inter alia*, DC's testimony could not be used as evidence that the 2017 conversation between DS and DT actually occurred. Court members are presumed to follow the military judge's instructions in the absence of evidence to the contrary, and in this case the court members affirmed they understood and could follow the instruction. *See United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (citations omitted). Because trial defense counsel disavowed any objection to the sole basis for which the evidence was admitted, we find Appellant waived the objection at trial.

Recognizing our Article 66, UCMJ, authority to pierce waiver and address legal errors, we find no cause to do so here. Assuming *arguendo* waiver did not apply, Appellant's argument is without merit. The military judge did not abuse his discretion by admitting DC's testimony for a non-hearsay purpose where

trial counsel agreed that was one of the purposes the Government intended, and where trial defense counsel expressly did not object to that purpose.

Further assuming for purposes of argument that the military judge did err, we would find the error had no substantial influence on the sentence. *See Barker*, 77 M.J. at 384 (citation omitted). In particular, the materiality of the evidence in the context of the entire sentencing landscape was very limited. The testimony did not change the undisputed facts and egregious nature of Appellant's offense as laid out in the stipulation of fact. Moreover, the quality of the evidence—hearsay testimony providing a brief description of a conversation about another conversation, neither of which conversations Appellant was directly involved in—was not such that it was likely to significantly influence the court members' deliberations. In light of the strong limiting instruction provided by the military judge, who warned the members they had "no evidence to suggest" the February 2017 conversation between DS and DT "actually took place," we are confident this evidence had no substantial influence on the adjudged sentence.

## B. DS's Victim Impact Statement

### 1. Additional Background

Prosecution Exhibit 1, a stipulation of fact agreed to by the parties and admitted at Appellant's court-martial "for all lawful purposes, to include any findings and sentencing proceedings," included information regarding Appellant's uncharged pre-service sexual abuse of DS. The stipulation stated, *inter alia*, that between the summer of 2015, when Appellant was 16 years old and DS was 11 years old, and the summer of 2017, when Appellant was 18 years old and DS was 13 years old, Appellant penetrated DS's vulva with his penis approximately two or three times per month on average. During some of these incidents Appellant blindfolded DS, restrained her with a belt, held her hands behind her back, "and/or" strangled her neck with his hands.

After the Government rested its case for presentencing, DS provided an oral unsworn statement to the court members remotely by video teleconference. Her unsworn statement took the form of responding to questions posed by her Special Victims' Counsel (SVC). DS's unsworn statement included a description of how Appellant's sexual abuse of her began in 2015, and it addressed the negative social and psychological consequences she felt as a result of the sexual abuse generally, including Appellant's uncharged misconduct. DS also provided a written unsworn statement to the court members that was substantially similar to her oral statement.

The military judge instructed the court members that they could consider the evidence of Appellant's uncharged pre-service sexual abuse of DS only "for its tendency, if any, one, to demonstrate [Appellant]'s predisposition to commit

acts of child molestation and two, to reflect the true impact of [Appellant]'s crime upon the victims." The military judge also instructed the court members that Appellant was "to be sentenced only for the offense of which he has been found guilty."

Trial counsel repeatedly referred to DS's unsworn statements during her sentencing argument, and at one point trial counsel read directly from the written unsworn statement.

### 2. Law

Interpreting a victim's right to be reasonably heard pursuant to R.C.M. 1001(c) is a question of law which we review de novo. *See Barker*, 77 M.J. at 382 (citations omitted) (interpreting victim's right to be reasonably heard pursuant to R.C.M. 1001A (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)). However, we review a military judge's decision to accept a victim impact statement offered pursuant to R.C.M. 1001(c) for an abuse of discretion. *See id.* at 383 (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)). "The 'judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect.'" *Humpherys*, 57 M.J. at 90 (citation omitted). In the absence of an objection at trial, we review claims of erroneous admission of a victim unsworn statement for plain error, where an appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (citations omitted).

R.C.M. 1001(c) provides that during presentencing proceedings, the victim of a non-capital offense of which the accused has been found guilty has the right to make a sworn statement, an unsworn statement, or both. *See also* 10 U.S.C. § 806b(a)(4)(B) (stating the victim of an offense under the UCMJ has a right to be reasonably heard at a court-martial sentencing hearing). Such statements "may only include victim impact and matters in mitigation." R.C.M. 1001(c)(3). For purposes of the rule, "victim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001 (c)(2)(B).

### 3. Analysis

Appellant contends the military judge abused his discretion by permitting DS "to give an unsworn statement concerning sexual misconduct of which [Appellant] was not tried or convicted . . . ." Appellant argues that DS's description of the impact of the entire course of her sexual abuse went well beyond impact "directly relating to or arising from" the single offense in November 2017 for which he was convicted. Appellant further contends the military judge's error substantially influenced the sentence, and asks this court to either reassess

his term of confinement to two years or to set aside the sentence and authorize a sentence rehearing.

We find Appellant is not entitled to relief. Because the Defense did not object to the content of DS's unsworn statements, we review Appellant's claim for plain error. The permissible scope of victim impact under R.C.M. 1001(c) includes social and psychological impact "directly relating to or arising from" the offense for which the accused is to be sentenced. We find our superior court's decision in *United States v. Nourse*, 55 M.J. 229 (C.A.A.F. 2001), instructive in this regard. In *Nourse*, the United States Court of Appeals for the Armed Forces (CAAF) interpreted the language of R.C.M. 1001(b)(4) defining the scope of sentencing evidence in aggravation, which stated in pertinent part that "trial counsel may present evidence as to any aggravating circumstances *directly relating to or resulting from* the offenses of which the accused has been found guilty." *Nourse*, 55 M.J. at 231 (quoting R.C.M. 1104(b)(4) (*Manual for Courts-Martial, United States* (1998 ed.)). The CAAF held that evidence of uncharged misconduct by an accused may be "admissible as an aggravating circumstance under RCM 1001(b)(4) [if] it directly relate[s]" to an offense of which the accused was convicted as "evidence of a continuous course of conduct . . . admissible to show the full impact" of the offense for which the accused is to be sentenced. *Id.* at 232. Although *Nourse* involved evidence in aggravation presented by the prosecution—applying language in R.C.M. 1001(b)(4) which has remained essentially unchanged—we note the similarity between the phrase "directly relating to or resulting from" in R.C.M. 1001(b)(4), dealing with evidence in aggravation, and the phrase "directly relating to or arising from" in R.C.M. 1001(c)(2)(B), dealing with victim impact.

Furthermore, we note that the parties had already stipulated to Appellant's pre-service sexual abuse of DS, and without objection the military judge instructed the court members they could consider this uncharged misconduct for its tendency to reflect the "true impact" of Appellant's November 2017 sexual assault of DS. Under the circumstances of this case, including the limiting instructions provided by the military judge, in light of *Nourse*, the military judge did not plainly or obviously abuse his discretion by permitting DS to address the psychological and social impact of the continuous course of Appellant's sexual abuse of DS as "directly relating to" the offense for which Appellant was convicted, in accordance with R.C.M. 1001(c)(2)(B).

## C. Exclusion of Defense Impeachment Evidence

### 1. Additional Background

As described above, at trial the Government introduced a stipulation of fact which included Appellant's pre-service sexual abuse of DS between the summer of 2015 and approximately 1 August 2017.

During the Government's sentencing case, DC testified about her daughter DS's childhood and situation in the household they shared with DT and Appellant. DC testified, *inter alia*, that after DS began living with DT and Appellant in 2015, her school performance declined and she was less interested in spending time with friends and other social activities. When trial counsel asked DC specifically about the impact of Appellant's misconduct on DS, DC identified DS's isolation, lack of trust, and self-harm. On cross-examination, DC agreed that Appellant's father DT was controlling and sometimes violent toward DC, Appellant, and DS. She also agreed that after DC and DS moved in with DT and Appellant, DS told her that DS wanted more attention from her. DC further agreed that DC and DT would sometimes argue and scream at each other after drinking alcohol together; that DS had told DC that DS hated it when DC drank alcohol; and that on one occasion DS told DC that DS "felt like [DS] could be doing heroin and [DC] wouldn't care because of [DC's] drinking." In addition, as described above, DC testified that DT was arrested in February 2018 after assaulting DC, which led to DT leaving the home, during which time DS reported Appellant's sexual abuse of her.

As stated above, DS's oral and written unsworn statements addressed the psychological and social impact of Appellant's offense. DS's statements included that before summer 2015 she had "a lot of friends" and a "good bond" with her mother. DS stated that after the sexual abuse began, in addition to causing fear, guilt, isolation, declining school performance, and other negative consequences, Appellant "took away" the "bond" between DS and her mother.

During the Defense's presentencing case, trial defense counsel offered Defense Exhibit K for Identification, a disc containing a videorecording apparently made by Appellant's father DT on some date in January or February 2018, before the incident resulting in DT's arrest. The approximately ten-minute video with sound appears to depict DT and DS confronting an intoxicated DC about her excessive consumption of alcohol. Among other comments, DS can be heard saying "I [DS] could be addicted to heroin or something and you probably wouldn't even care." The Defense proposed to play the audio portion of the recording for the court members in order to "illustrate . . . the emotional state and the psychological state of the . . . household at the time." Trial defense counsel contended the exhibit was relevant to counter DC's testimony which "downplay[ed]" the discord and dysfunction that existed in the household, and to show another potential cause of DS's psychological and social difficulties other than Appellant's sexual abuse. The Government objected to the exhibit on the basis of hearsay, as well as unfair prejudice and cumulativeness under Mil. R. Evid. 403.

In a lengthy oral ruling, the military judge did not admit Defense Exhibit K for Identification. The military judge found the exhibit did have some relevance as rebuttal to DS's unsworn statements, and as to the credibility of DS and DC.[6] However, the military judge then applied Mil. R. Evid. 403 and found the countervailing concerns of unfair prejudice, confusion of the issues, misleading the members, and cumulativeness substantially outweighed the probative value.

### 2. Law

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017) (citation omitted).

R.C.M. 1001(d)(1) provides "[t]he defense may present matters in rebuttal of any material presented by the prosecution and the crime victim, if any, and may present matters in extenuation and mitigation . . . ."

"Bias, prejudice, or motive to misrepresent may be shown to impeach [a] witness either by examination of the witness or by evidence otherwise adduced." Mil. R. Evid. 608(c).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Mil. R. Evid. 401. Relevant evidence is generally admissible, unless another provision of law provides otherwise; irrelevant evidence is not admissible. Mil. R. Evid. 402.

The military judge may exclude relevant evidence that is otherwise admissible if its probative value is substantially outweighed by a countervailing concern, including *inter alia* unfair prejudice, confusion of the issues, misleading the members, or cumulativeness. Mil. R. Evid. 403. "A military judge enjoys 'wide discretion' in applying Mil. R. Evid. 403." *United States v. Harris*, 46 M.J. 221, 225 (C.A.A.F. 1997) (quoting *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995)). "When a military judge conducts a proper balancing test under Mil. R. Evid. 403, the ruling will not be overturned unless there is a 'clear abuse of discretion.'" *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (quoting *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998)).

Whether an error is harmless is a question of law we review de novo. *Bowen*, 76 M.J. at 87 (citation omitted). "When there is error in the admission of sentencing evidence, the test for prejudice 'is whether the error substantially influenced the adjudged sentence.'" *Barker*, 77 M.J. at 384 (citation omitted).

---

[6] The military judge also found the recording was relevant with regard to the credibility of DS's grandmother, who testified as a government witness but whose testimony is not material to the issues on appeal.

We consider four factors when determining whether an error had a substantial influence on the sentence: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id*. (citations omitted).

### 3. Analysis

Appellant contends the military judge abused his discretion because the audio of Defense Exhibit K was relevant and admissible as evidence of bias and motive to misrepresent under Mil. R. Evid. 608(c) and evidence in mitigation and extenuation under R.C.M. 1001(d)(1), and the probative value was not substantially outweighed by countervailing concerns under Mil. R. Evid. 403. Appellant argues Defense Exhibit K was "crucial" to the Defense's presentencing case because it showed DC's alcohol abuse and the general dysfunction of the household, rather than Appellant's misconduct, caused the rift with DC and other psychological and social impacts on DS, and the dysfunction provided a motive for DS to "misrepresent" the situation in order "to change her circumstances." Appellant further contends the probative value of the recording was high because the degree to which Appellant's misconduct impacted DS and the conflicting descriptions DS and Appellant provided of their relationship were central disputes in the case, and Defense Exhibit K "directly" supported the Defense's theory.

We do not find the military judge erred. Because the military judge conducted a full analysis under Mil. R. Evid. 403, we review his ruling for a clear abuse of discretion.[7] We agree with the military judge that the recording had some amount of relevance to evaluating the motives and credibility of DS and DC, and to evaluating DS's description of the impact of Appellant's offense. However, we further agree with the military judge that the probative value was slight in light of the evidence previously admitted and the circumstances of the case. The Defense proposed to introduce ten minutes of audio of a single incident on an unknown date in January or February 2018. DC had already testified that DT could be controlling and abusive; that sometimes DC and DT argued after drinking alcohol; that DS wanted more attention from DC and was frustrated by DC's alcohol consumption; and DS had said she thought if she used heroin DC would not care because of DC's drinking. Defense Exhibit K was essentially additional evidence of this same information. Furthermore, the occurrence of this incident in January or February 2018 did not materially tend to impeach DS's statement that she had a strong bond with her mother

---

[7] Appellant asserts we should afford the military judge's ruling "less deference" because he did not conduct a "full and thorough balancing analysis on the record" and "ignor[ed] a majority of the listed [Mil. R. Evid. 403] factors." *See Manns*, 54 M.J. at 166 (citation omitted). We find this assertion unsupported by the record.

*before* they moved in with DT and Appellant and the sexual abuse began in summer 2015. On the other hand, the recording depicted an embarrassing situation, not directly involving Appellant or his offense, in which DT and DS bluntly directed harsh criticism at DC's behavior and alleged alcohol abuse. The military judge could reasonably perceive a substantial risk that the court members would be unduly distracted by this largely cumulative evidence, without any material benefit to their role in the truth-finding process. We conclude the military judge's ruling was not clearly "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *McElhaney*, 54 M.J. at 130 (citation omitted).

Assuming *arguendo* the military judge erred by excluding Defense Exhibit K, we find such an error had no substantial influence on the sentence. The Government's sentencing case was strong. Appellant's sexual abuse of the 13-year-old DS in November 2017 followed two years of regular sexual abuse beginning when DS was 11 years old. The Government introduced evidence of the negative impact of Appellant's offense through the testimony of her mother and the Government's expert in clinical and forensic psychology, Dr. JT. This testimony was reinforced by DS's own unsworn statements detailing the impact. By contrast, the Defense's sentencing case was comparatively weak. Although the Defense was able to highlight the significant negative circumstances of Appellant's childhood, Appellant's written and oral unsworn statements notably appeared to attempt to portray DS as a willing participant,[8] and were exploited by the Government as indicating a failure to accept responsibility. Moreover, Appellant's brief career in the Air Force was marred by five letters of reprimand and a nonjudicial punishment action. Furthermore, the materiality and quality of Defense Exhibit K were not such that they would have influenced the sentence. As described above, the recording depicted a single incident that was largely cumulative with DC's testimony and did not directly involve Appellant or his offense.

---

[8] Appellant's written unsworn statement included the following comments:

> We were both young, but I was still older and should have known better. We should not have had sex, and I should have been the one to stop it. . . . I never forced [DS] to have sex with me. I never threatened her, I never made her. If I ever thought she didn't want to do it, I would've stopped immediately. That does **not** excuse what I did. Looking back, I know now we never should have done what we did. . . .

> Right after I finished tech school, I went home for Thanksgiving. . . . Me and [DS] found each[ ]other again and **we had sex**. . . . I know we shouldn't have. I know what I did was wrong. Just please know with everything between me and [DS], I never forced her to do anything.

Accordingly, Appellant's contention that he is entitled to sentence relief is without merit.

## D. Trial Counsel Sentencing Argument

### 1. Additional Background

The military judge provided the court members with the following instruction regarding evidence of Appellant's sexual abuse of DS prior to entering the Air Force, as set forth in the stipulation of fact:

> You received evidence that the accused sexually abused [DS] between on or about the summer of 2015 until he entered active duty service on or about 1 August 2017, on occasions that are not charged offenses in this court-martial. This evidence can only be considered for its tendency, if any, one, to demonstrate the accused's predisposition to commit acts of child molestation and two, to reflect the true impact of the accused's crime upon the victims. I also remind you that, although you must give consideration to all matters in mitigation and extenuation, as well as to those in aggravation, the accused is to be sentenced only for the offense of which he has been found guilty.

Shortly thereafter, trial counsel delivered her sentencing argument in which she recommended the court members impose confinement for 15 years, total forfeiture of pay and allowances, reduction to the grade of E-1, and the mandatory dishonorable discharge. Trial counsel argued, *inter alia*, that "the way in which this offense was committed" was that "it was repeated" was an aggravating circumstance. She also noted Appellant's sexual abuse of DS began when DS was 11 years old, and that Appellant was five years older than her. Trial counsel further argued:

> I want to talk about, as I've done a little bit already, this uncharged conduct, that this sexual abuse occurred over a period of years, and from the Stipulation of Fact you know roughly around 30 times that this occurred. The military judge has instructed you that this is [sic] can be considered for only two purposes. First, is to demonstrate the accused's predisposition to commit sexual acts of child molestation, and the second is to reflect on the true impact of the accused's crime upon [DS].
>
> . . . [Y]ou might think 15 years is appropriate for the charged offense, but you know what, I know that there were other occasions, so I am going to make the punishment higher, but you absolutely cannot do that. But what you can do is consider how it puts into context the backdrop of when this charged offense occurs, and when you hear from [DS] about how this impacted

> her, that's what you can consider it for, as well as his predisposition, predisposition to commit offenses of child molestation. What does predisposition mean? It's that he's naturally inclined to commit this type of offense. That translates to a long period of confinement.
>
> . . . .
>
> What does 15 years do for [Appellant] besides giving him an appropriate punishment for the severity of his offense? It gives him the opportunity to be rehabilitated, because you know from the military judge's instruction, that you can consider the fact that this was repeated approximately 30 times over the course of 2 years, to an 11 year old, that he might have the propensity to commit this type of offense.

Trial counsel also quoted portions of DS's unsworn statement in which DS referred to the fact that Appellant had sexually abused her for two years and how that had negatively impacted DS emotionally, socially, and academically.

Trial defense counsel did not object to the Government's sentencing argument.

### 2. Law

Improper argument is a question of law that we review de novo. *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (citation omitted). If there is no objection at trial, on appeal the appellant bears the burden to demonstrate plain error. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citations omitted). When reviewing an allegedly improper argument for plain error, the appellate court "must determine: (1) whether trial counsel's arguments amounted to clear, obvious error; and (2) if so, whether there was 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Id*. (quoting *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017)) (additional citations omitted).

"Trial prosecutorial misconduct is behavior by the prosecuting attorney that 'oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88) (additional citation omitted). A prosecutor may strike hard blows, but not foul blows, and she is not permitted to "unduly inflame the passions or prejudices of the court members." *Frey*, 73

M.J. at 248 (quoting *United States v. Marsh*, 70 M.J. 101, 102 (C.A.A.F. 2011) (additional citations omitted).

"A prosecutorial comment must be examined in light of its context within the entire court-martial." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citation omitted). In assessing prejudice from improper argument, we balance three factors: (1) the severity of the misconduct; (2) the measures, if any, adopted to cure the misconduct; and (3) the weight of the evidence supporting the conviction or sentence. *See United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (citing *Fletcher*, 62 M.J. at 184). With respect to sentencing arguments, "[w]e consider the *Fletcher* factors to determine whether 'trial counsel's comments, taken as a whole, were so damaging that we cannot be confident' that [the appellant] was sentenced 'on the basis of the evidence alone.'" *Erickson*, 65 M.J. at 224 (quoting *Fletcher*, 62 M.J. at 184).

Mil. R. Evid. 414(a) provides that "[i]n a court-martial proceeding in which an accused is charged with an act of child molestation, the military judge may admit evidence that the accused committed any other offense of child molestation. The evidence may be considered on any matter to which it is relevant." In this context, "child molestation" includes a crime under federal or state law that involves, *inter alia*, "contact between the accused's genitals . . . and any part of a child's body." Mil. R. Evid. 414(d)(2)(E).

### 3. Analysis

Appellant acknowledges evidence of his uncharged sexual misconduct with DS was "legally allowed under Mil. R. Evid. 414," but contends trial counsel misused the evidence by "consistently argu[ing] two aggravating factors to unduly inflame the members – that the offense was repeated, and that the sexual abuse started when [DS] was 11 years old." Appellant avers trial counsel's argument improperly invited the court members to punish him for the uncharged misconduct.

We disagree. Trial counsel made significant use of the instances of uncharged misconduct, but she did so consistent with how the military judge instructed the court members to consider the information—as evidence of Appellant's predisposition to commit such offenses, and to provide context to the sexual assault of DS for which Appellant was to be sentenced. Trial counsel explicitly referred to the military judge's instructions and tied her argument to them.[9] Moreover, she specifically told the court members they "absolutely"

---

[9] The gist of Appellant's argument is that trial counsel's argument improperly "encouraged [the court members] to severely punish [him] for repeated instances of sexual assault against D.S. instead of focusing on the one charged incident," rather than that

trial counsel emphasized future risk. To the extent trial counsel's specific comment about Appellant being "naturally inclined to commit this kind of offense" could be interpreted as a comment on Appellant's future dangerousness, we note the CAAF has explained "evidence of future dangerousness is a proper matter [for sentencing] under [R.C.M.] 1001(b)(5) . . . ." *United States v. George*, 52 M.J. 259, 261 (C.A.A.F. 2000) (citing *United States v. Williams*, 41 M.J. 134, 137–38 (C.M.A. 1994)) (interpreting R.C.M. 1001(b)(5) (*Manual for Courts-Martial, United States* (1995 ed.). R.C.M. 1001(b)(5), addressing evidence of rehabilitative potential generally, does not expressly require such evidence to be presented in the form of expert testimony. However, we further note several recent unpublished opinions of this court have relied on the CAAF's decision in *Frey*, 73 M.J. at 250, *supra*, for the proposition that evidence of "recidivism" requires expert testimony. *See United States v. Hodge*, No. ACM 39259, 2018 CCA LEXIS 340, at *11 (A.F. Ct. Crim. App. 10 Jul. 2018) (unpub. op.); *United States v. Obregon*, No. ACM 39005, 2017 CCA LEXIS 609, at *11 (A.F. Ct. Crim. App. 6 Sep. 2017) (unpub. op.); *United States v. Merritt*, No. ACM 38653, 2015 CCA LEXIS 382, at *7 (A.F. Ct. Crim. App. 10 Sep. 2015) (unpub. op.). In *Frey*, in a prosecution for sexual offenses against a child, the trial counsel in sentencing argument acknowledged there was "no evidence" the appellant had committed other similar offenses, but appealed to the court members' "common sense" and knowledge of the "ways of the world, about child molesters." *Frey*, 73 M.J. at 247. Finding error, the CAAF explained:

> [W]hether or not a person convicted of a particular offense is more or less likely to offend again or become a serial recidivist is a question requiring expert testimony, empirical research, and scientific and psychological method, inquiry, and evidence. Recidivism is not a matter resolved through appeal to common sense or a member's knowledge of "the ways of the world."

*Id.* at 250. We do not understand *Frey* to preclude, during sentencing proceedings in a prosecution for an act of child molestation, references to evidence of other acts of child molestation, admitted either by stipulation or in accordance with Mil. R. Evid. 414, and their implications for whether the accused has a propensity or predisposition to commit such offenses. *See United States v. Tanner*, 63 M.J. 445, 449 (C.A.A.F. 2006) ("[Mil. R. Evid. 414] reflects a presumption that other acts of child molestation constitute relevant evidence of predisposition to commit the charged offense. As such, in a child molestation case, evidence of a prior act of child molestation 'directly relat[es] to' the offense of which the accused has been found guilty and is therefore relevant during sentencing under R.C.M. 1001(b)(4)."). We have additionally considered that trial counsel's "naturally inclined" comment was directly based on the military judge's instruction on predisposition (an instruction to which Appellant waived any objection, *see United States v. Davis*, 79 M.J. 329, 332 (C.A.A.F. 2020), *cert. denied*, 141 S. Ct. 355 (2020)); was itself not objected to; was not the main theme of trial counsel's argument; and apparently did not persuade the members to adopt trial counsel's entire sentencing recommendation. We conclude Appellant is not entitled to relief specifically from trial counsel's "naturally inclined" comment.

could not punish Appellant for the uncharged instances, thereby reinforcing the military judge's instruction that the members were to sentence Appellant "only for the offense of which he has been found guilty." Trial counsel's references to the uncharged misconduct, although repeated, were properly framed and were not so extensive or disproportionate as to clearly or obviously inflame the passions or prejudices of the court members.

Appellant's comparison of the instant case to *United States v. Schroder*, 65 M.J. 49 (C.A.A.F. 2007), is unconvincing. In *Schroder*, the appellant was prosecuted for committing rape against his 12-year-old daughter and committing indecent acts against a 12-year-old neighbor; pursuant to Mil. R. Evid. 414, the Government also admitted evidence of uncharged acts of molestation of the daughter and of a third child, SJS. *Id.* at 51–52. The CAAF found plain and obvious error where the Government's findings and sentencing arguments referred to all three girls as "victims," and appealed to the court members to "render justice" for SJS as well as for the victims of the charged offenses.[10] *Id.* at 57–58. However, nothing comparable occurred in Appellant's case. Unlike *Schroder*, trial counsel used the evidence of uncharged misconduct properly, inviting the court member to use it to "inform their judgment[ ] regarding the charged conduct," and she did not seek punishment for uncharged offenses. *Id.* at 58.

Accordingly, we find no plain error in trial counsel's sentencing argument.

## E. Outside Influence on Court Members

### 1. Additional Background

On 13 July 2020, Appellant moved to attach a declaration signed by his trial defense counsel, Captain (Capt) RV, dated 25 June 2020. Capt RV's declaration described how, as the Area Defense Counsel for Mountain Home AFB, her office was close to the workplace of Capt MA, who worked on the wing staff and was a member on Appellant's court-martial. According to Capt RV, soon after Appellant's trial she stopped by Capt MA's duty section. Capt MA was there with a group of enlisted and civilian personnel. Although Capt RV did not ask Capt MA about the court members' deliberative process, Capt MA spontaneously made a statement to the effect that the court members might have imposed a lighter punishment on Appellant but for their concerns about potential media reports of the court-martial.

The Government opposed Appellant's motion to attach Capt RV's declaration, contending that this court lacked the authority to consider it in light of

---

[10] However, the CAAF further found the improper argument did not affect the findings or sentence, and granted the appellant no relief. *Schroder*, 65 M.J. at 58–59.

the CAAF's decision in *Jessie*, 79 M.J. at 444–45. This court granted Appellant's motion over the Government's opposition.

Appellant waived his right to submit clemency matters to the convening authority, and neither the comments attributed to Capt MA nor any equivalent information appears in the record of trial, other than in Capt RV's declaration.

**2. Law and Analysis**

The version of Article 66(d), UCMJ, applicable to Appellant's trial provides in pertinent part that a CCA "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, *on the basis of the entire record*, should be approved." (Emphasis added.)

In *Jessie*, the CAAF interpreted similar language in the previous version of Article 66(c), UCMJ (2016 *MCM*). 79 M.J. at 444. The CAAF concluded that, as a general rule, a CCA reviewing a case referred to it "cannot consider matters outside the 'entire record,'" defined as the "record of trial," "allied papers," and "briefs and arguments that government and defense counsel (and the appellant personally) might present regarding matters in the record of trial and 'allied papers.'" *Id.* at 440–41 (citing R.C.M. 1103(b)(2) and (3) (2016 *MCM*); *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988); *United States v. Fagnan*, 30 C.M.R. 192, 194 (C.M.A. 1961)). The CAAF recognized that its decisions since *Fagnan* indicated two exceptions to this general rule. *Id.* at 442–43. First, "some precedents have allowed the CCAs to supplement the record" with affidavits or hearings pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam), "when deciding issues that are raised by materials in the record." *Jessie*, 79 M.J. at 442. Second, CAAF precedents also "allowed appellants to raise and present evidence of claims of cruel and unusual punishment and violations of Article 55, UCMJ, [10 U.S.C. § 855,] even though there was nothing in the record regarding those claims." *Id.* at 444.

In the instant case, notwithstanding that this court granted Appellant's motion to attach Capt RV's declaration describing Capt MA's comments about the court member deliberations, we find the general rule the CAAF articulated in *Jessie* precludes our consideration of this information. Capt RV's declaration is neither part of the record of trial, an allied paper, nor a brief or argument based on matter in the record of trial or allied papers, and is therefore outside the "entire record" as *Jessie* defined it.[11] *See id.* at 440–41 (citations omitted).

---

[11] Although not entirely clear, it appears likely the Defense had the opportunity to put evidence of Capt MA's statements to Capt RV into the "entire record" before the military judge initially entered the judgment in this case. Capt RV's declaration does not

Moreover, the issue of improper outside influence on the court members' deliberations was not raised anywhere in the entire record, and therefore Capt RV's declaration cannot properly supplement the record in accordance with the first exception recognized in *Jessie*. In addition, Capt RV's declaration plainly does not relate to the imposition of cruel or unusual punishment in violation of the Eighth Amendment or Article 55, UCMJ, and so does not meet the second exception in *Jessie*. Accordingly, under *Jessie*, Article 66, UCMJ, does not permit this court to consider Capt RV's declaration, and Appellant's claim must fail—irrespective of its substantive merit, which we do not reach.

## F. Sentence Severity

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 2. Analysis

Appellant contends his sentence to confinement for seven years is inappropriately severe. He argues that he grew up in a "violent, dysfunctional household" without appropriate adult role models, which "resulted in him making poor decisions because he did not know any better." He further contends that

---

indicate the date of Capt MA's statements, but her declaration dated 25 June 2020 indicates it was "close in time after the trial ended" on 1 May 2019. On 9 May 2019, Capt RV notified the convening authority that the Defense would not be submitting clemency matters. However, the convening authority did not issue his decision on action until 25 June 2019, and the military judge did not sign the initial entry of judgment until 13 August 2019, until which date the military judge retained the authority to convene a post-trial hearing pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), upon the motion of either party. *See* R.C.M. 1104(a). However, because the issue is not raised in the "entire record," *Jessie* precludes our consideration of Capt RV's declaration regardless of when the Defense became aware of the asserted issue with the court members' deliberations. Notice of the issue prior to entry of judgment is not a factor—nor, of course, is the fact that *Jessie* was not decided until 6 April 2020.

he "is not a serial offender" and that "[s]ociety does not need to be protected from him." Appellant requests this court reduce his term of confinement to two years.

We are not persuaded Appellant's term of confinement is inappropriate. We do not deny that Appellant grew up in difficult circumstances, but nothing in his background excuses his sexual assault of a child. Furthermore, we note Appellant committed the offense for which he was convicted and sentenced months after he left the household, joined the Air Force, and successfully completed basic training and technical training. Having demonstrated the maturity and capacity to become an Airman, Appellant subsequently chose to exploit the opportunity to sexually assault a 13-year-old child he had frequently abused in the past. The court-martial could have sentenced Appellant to a term of 30 years in confinement, in addition to a dishonorable discharge and other punishments; the convening authority could have approved confinement for up to 15 years consistent with the pretrial agreement. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude Appellant's sentence is not inappropriately severe.

## G. Post-Trial Confinement Conditions

### 1. Additional Background

On appeal, Appellant has provided a declaration describing the alleged conditions of his post-trial confinement at the Elmore County Jail in Mountain Home, Idaho, between 1 May 2018 and 18 June 2018. Appellant asserts he was housed in solitary confinement in a cell he was permitted to leave for only one hour per day. He asserts that the jail "served beans one to two times per day;" because he is allergic to beans, "a lot of the time" Appellant "ended up eating only one meal per day." Appellant states he attempted to use the jail's grievance system to address his allergy, but to no avail. Appellant claims that as a result his weight declined from approximately 155 pounds to approximately 128 pounds during his confinement at the jail. In addition, he asserts that human waste leaked into his cell from a neighboring cell; although Appellant was initially moved to another cell after he complained, he was eventually moved into the neighboring cell from which the contamination had come. Although the floor had been cleaned, there was still human waste on the wall, which the guards told Appellant to clean with cleaning wipes. Appellant spent approximately a day and a half in this cell before he was moved again at his request.

In response, the Government submitted a declaration from Lieutenant (Lt) SC, the Jail Administrator. Lt SC explained that although Appellant had used the jail's prisoner request system to make two "general requests," three "grievances," three "medical requests," and six "vending requests," Appellant "never

submitted any complaints concerning any of the allegations" in his declaration. Lt SC described the three "grievances" Appellant did file as "not true grievances," and she attached copies of all of these requests to her declaration. Lt SC further explained that Appellant was segregated from other inmates in accordance with the jail's memorandum of agreement with Mountain Home AFB, in order to avoid contact with foreign nationals. *See* 10 U.S.C. § 812 (2016 *MCM*). According to Lt SC, Appellant was afforded two hours per day outside of his cell for recreation, phone calls, personal hygiene, and receiving visitation. Lt SC stated Appellant received three meals a day and only refused one meal during his stay at the jail. With regard to weight loss, Appellant self-reported his weight as 150 pounds on 1 May 2019; on 9 May 2019 he was weighed at 138 pounds during his medical screening. With regard to Appellant's cell being contaminated by waste from another inmate's cell, Lt SC stated: "another inmate did flood his cell and contaminate parts of the [ ] Hallway. [Appellant] was moved to [another cell] which is physically separated from the main hallway. [Appellant] was moved while janitors cleaned and sanitized the affected areas." Lt SC does not directly address Appellant's contention that he was moved into the cell from which the contamination originated.

The Government also submitted a declaration from Staff Sergeant (SSgt) JP, the noncommissioned officer in charge of confinement for Mountain Home AFB. SSgt JP stated, *inter alia*, that in order to comply with 10 U.S.C. § 812 (2016 *MCM*), the agreement between Mountain Home AFB and the jail required that Air Force confinees would not be commingled with the general inmate population.

### 2. Law

We review de novo whether an appellant has been subjected to impermissible conditions of confinement in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (citations omitted). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to

[his] health and safety; and (3) that he "has exhausted the pris-
oner-grievance system . . . and that he has petitioned for relief
under Article 138, UCMJ, 10 USC § 938 [2000]."

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and second
alteration in original) (internal citations omitted).

### 3. Analysis

Appellant asserts the conditions of his confinement at the Elmore County
Jail amounted to cruel and unusual punishment in violation of the Eighth
Amendment and Article 55, UCMJ. We find Appellant has failed to carry his
burden to demonstrate he is entitled to relief.

First we note Lt SC's declaration contradicts Appellant's declaration in sev-
eral material respects.[12] We have considered whether a post-trial evidentiary
hearing is required to resolve such discrepancies, and we conclude such a hear-
ing is not required. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997);
*United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam). Even if we
resolved the differences in Appellant's favor, he would not be entitled to relief.
*See Ginn*, 47 M.J. at 248.

Appellant bears the burden to demonstrate all three conditions set forth in
*Lovett* have been met in order to be entitled to relief under the Eighth Amend-
ment or Article 55, UCMJ, including the requirement that he petitioned for
relief under Article 138, UCMJ, and exhausted the jail's grievance system.
*Lovett*, 63 M.J. at 215. Appellant concedes he did not seek relief pursuant to
Article 138, UCMJ. In addition, we find the record compellingly demonstrates
Appellant failed to exhaust the prisoner-grievance system with respect to the
claims he has raised on appeal. *See Ginn*, 47 M.J. at 248. Moreover, we find no
cause to excuse Appellant's failure to pursue such relief before seeking relief
from the appellate courts. Therefore, Appellant cannot prevail, and under the
circumstances of this case we need not and do not address the merits of Appel-
lant's claims with respect to the remaining *Lovett* requirements.

---

[12] This court granted the parties' motions to attach the declarations of Appellant,
Lt SC, and SSgt JP in accordance with *Jessie*, 79 M.J. at 444–45 (explaining the Courts
of Criminal Appeals may consider material outside the "entire record" in order to de-
cide claims of cruel and unusual punishment in violation of the Eighth Amendment
and Article 55, UCMJ).

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59 and 66, UCMJ, 10 U.S.C. §§ 859, 866. Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court